Kjnkead, J.
The plaintiff is the widow of Erskine A. Fuller, who died July 24, 1884, and the defendants are heirs of the deceased. This action is brought to set aside a certain contract which was made on the 10th day of September, 1907, between the plaintiff, 'as *426 widow, and the defendant herein, excepting Helen H. Osborn, who was a minor; by the terms of which contract an arrangement was made whereby the plaintiff agreed to relinquish to the defendants all of her dower right and interest in and to all the remaining personaloand mixed estate of her deceased husband. The terms of this contract are set out at length in the petition, and all of the real estate of which the deceased died possessed is described. The contract was so framed that the heirs had the privilege of effecting a sale of any or all of the real estate, and in case such sales were made, the plaintiff agreed to join in the deeds of conveyance, releasing her dower. The contract,.in substance, further provided that whenever the sum of $15,000 had been deposited with a trustee, then in that event the plaintiff should execute and deliver to the defendants a quit-claim deed conveying and releasing to them all her interest by way of dower or otherwise in and to all property, real, personal and mixed, then remaining and belonging to the said Erskine A. Fuller’s estate. It was left optional with the heirs to raise this fund by personal contributions or by a sale of the property. There was a further condition in the agreement to the effect that in consideration of the relinquishment by plaintiff of her dower interest in , the property, that the defendants were to pay the plaintiff‘annually so long as she should live, the sum of $400 in equal monthly installments of $33.33 1-3 per month on the 1st day of October, 1897, and a like sum on the first day of each month thereafter during his life. Certain of the defendants bound themselves as sureties to the faithful compliance with this provision of the contract, and the contract further provided that in case the annual payments of the $400 should be made to her, that she would from and after the 1st day of October, 1897, and so long as the payments were made, release all her claim to any part of the rents and income arising from said real estate.
It appears from the petition that the defendants did not raise the $15,000 trust, fund, and that they failed to perform any of the provisions of the contract, excepting the payment of monthly installments of $400 per year, the plaintiff receiving in all the sum of $5,000.
It is alleged that the real estate of the deceased Fuller at the date of the contract was worth about the sum of $150,000, and *427 that it is now worth about $220,000; that the value of her dower estate in said real estate at the time of making the contract was, reasonably, the sum of about $29,000, she being then fifty-three years of age; that the value of her dower estate therein is now worth about the sum of.$35,000; that all she has received in lieu of dower in said real estate since the date of the contract or at any time since the death of her husband is about the sum of $5,100, covering a period of about thirteen years.
The grounds upon which the plaintiff seeks to have the contract vacated and set aside and to have her rights restored, and to have her dower in the property assigned as appears in the petition, are the following:
"At the time of entering into said contract,, plaintiff had no knowledge whatever of the value of said real estate, and no knowledge of the rental value thereof, except as she was then informed, and- she never knew, and was never informed of the value of said real estate, until within the past few months.
"She had no knowledge of the value of her dower estate in said real estate and no knowledge as to how the same should be set off or paid to her, and relied wholly upon information from other parties with respect thereto. * * * A short time prior to the date of said contract, she was informed by the administrator of said estate that there would be nothing due her therefrom, and by reason of her necessity for immediate funds for her support, she took steps to obtain her dower in said real estate, and was then informed by defendants that the rental value of said real estate was about the sum of $1,500 per year, and by others that all she was entitled to therefrom was one-third of the net gains and issues arising therefrom as and for her dower estate therein, or to have one-third of said real estate set off to her as and from her dower in all thereof, from which she would have the rents and issues therefrom during her life; that she had no absolute right or other interest therein whatever, and in her negotiations with defendants for an adjustment of her said dower rights was informed by them that they would not give her more them the sum of $400 per year therefor during her life, and that was all she was possibly entitled to therefrom. -She was also informed by an attorney whom she -engaged in her service, that said settlement was the only settlement that could be -made and that said stipulated sums were all that she was entitled to. All of the aforesaid information and representations plaintiff believed to be true and relied thereon absplutely in the making of said contract, and in pursuance thereof signed the same.”
*428 The petition further alleges that:
“Plaintiff was ignorant of her legal rights with respect to her dower in said real estate at the time of making' said contract, and did not know, and was not informed by any one that the assignment of dower to her in said real estate, or as of the issues and profits thereof, could not be made to her' so as to provide her an income therefrom commensurate with the value of said real estate, and so remained in ignorance thereof until within a few weeks last past when she learned for the first time that she was entitled to be endowed and should have been endowed as of the true value of all of said real estate at the time of making said contract. Had plaintiff been so advised, or had so known, and had she not been deceived in the premises she would not have entered into said contract which has operated fraudulently upon her with respect to her dower right in said estate.”
The following points are deducted from the petition which should be kept in mind in applying the law:
1. It was a family settlement of the rights of the widow.
2. She had no knowledge of the value of her rights, nor of the law concerning them.
3. She was misinformed by the administrator concerning her rights, both as to law and fact. He sustained a relation of trustee to her.
4. She was told by the heirs that they would give her $400 per year during her life for her interest in the property and that that was all she was possibly entitled to therefrom.
5. She was told by an attorney that the settlement which was proposed and which was made, was the only one that could be made.
6. She believed all these things to be true as represented to her and acted accordingly.
It is urged in support of the demurrer that the plaintiff can not recover because she is seeking relief as against a mistake of law, and numerous authorites are cited in support of that well established rule. But counsel must bear in mind that there is a marked distinction between the class of eases where the mistake is one of pure law, or where the mistake of law is made with reference to some general law, and cases where mistake is one of mixed-fact and law, and another important class of cases where one party to a transaction has acted under a mistake of law *429 which is superinduced by representations which, even though they may not be fraudulent within the law but aré such as to render the conduct of those making them inequitable.
Summed up in a few words, we have here a case where a widow was ignorant of her legal rights as such, and was ignorant of the value of the property, and of the value of her portion thereof.
It is clearly apparent that the heirs were making this settlement for their own benefit, and that they did not have due regard for the rights of the widow. Settlement was greatly to the advantage of the heirs, and greatly to the disadvantage of the widow. The settlement was participated in by the husbands of a portion of the heirs who were, no doubt, well informed concerning the legal rights of the widow and of their wives, the heirs.
The relations existing betwen the widow and the heirs being of a confidential character or nature, the law expects and exacts of the latter fairness, honestly and justice toward the former; it exacts from those who know what the law and the facts are the duty of perfect enlightenment of the one who is uninformed and with whom they are dealing concerning all the essential facts and the law which enter into the contract.
In the consideration of the facts in this pleading the court may proceed irpon either of two theories. Tt may consider that the heirs either had exact knowledge of the facts and the law, or that they were in ignorance thereof. If they lacked either, equity will afford plaintiff relief. If they had knowledge of the law and the fact, then it must follow that they took advantage of the lack of knowledge of the'widow and that they obtained an unconscionable advantage of her and were, therefore, guilty of inequitable conduct if nothing more. That' being so, the facts presented brings plaintiff’s case within the, well settled rule of equity that affords relief where a party acts concerning his or her own private rights of property or interest therein, when other interested parties are guilty of inequitable conduct.
On the other hand, if the heirs were as ignorant of the rights of the plaintiff as she was herself, then equity will grant relief because the mistake can truly be said to be mutual and it was a mistake of law based upon certain essential facts. The law is well settled that relief in equity will be granted in such eases because the mistake is one of mixed law and fact, and the au *430 thorities class it as a mistake of fact. But I am of the opinion that the facts of this case bring it within the rule first stated. There is, therefore, no question of mutuality involved in this case. The court has to deal with the sole mistake of the plaintiff and the inequitable conduct of the defendants.
' Having examined a number of authorities which have not been referred to by counsel, I will direct the attention of the counsel to them. Mr. Pomeroy states the rule to be:
“Whatever be the effect of a mistake pure and simple, there is no doubt that equitable relief, affirmative or defensive, will be granted when the ignorance or misapprehension of a party concerning the legal effect of a transaction in which he engages, or concerning his own legal rights which are to be-affected, is induced, procured, aided, or accompanied by inequitable conduct of the other parties. It is not necessary that such inequitable conduct should be intentionally misleading, much less that it should be actual fraud; it is enough that the misconception of the law was the result of, or even aided or accompanied by, incorrect or misleading statements, or acts of the other party. * * !>:< A court of equity will not permit one party to take advantage and enjoy the benefit of an ignorance or mistake of law by the other, which he knew of and did not correct. ’ ’ ■
At another section of the same work, Section 849, the learned author states:
“A person may be ignorant or mistaken as to his own antecedent exsting legal rights, interests, duties, liabilities, or other relations, while he .accurately understands the legal scope of a transaction into which he enters, and its legal effect upon his rights and liabilities. It will be found that the great majority, if not indeed all, of the well-considered decisions in which relief has been extended to mistakes pure and simple fall within this class; and also, that whenever cases of this kind have arisen, relief has almost always been granted, although not always on this ground. Courts have felt the imperative demands of justice, and have aided the mistaken parties, although they have often assigned as the reason for doing so some inequitable conduct of the other party which they have inferred or assumed. The real reason for this judicial tendency is obvious, although it has not always been assigned. A private legal right, title, estate, interest, duty, or liability is always a very complex conception. It necessarily depends so much upon conditions of fact, that it is difficult if not impossible, to form a distinct notion of a private legal rght, interest or liability, separated from the facts in which *431 it is involved and upon which, it depends. Mistakes, therefore, of a person with respect to his own private legal rights and liabilities may be properly regarded — as in great measure they really are — and may be dealt with as mistakes of fact. Courts have constantly felt and acted upon this view, though not always avowedly. ’ ’ ,
The learned author in the same section ventures to formulate the followng general rule which he characterizes- as eminently just and based upon principle, and furnishing a simple criterion defining the extent of the jurisdiction. He says:
“The number of decisions which support it, and which it explains is very great.
“Whenever a person is ignorant or mistaken with respect to his own antecedent and existing private legal rights, interests, estates duties, liabilities, or other relation, either of property or contract or personal status, and enters into some transaction the legal scope and operation of which he correctly apprehends and understands, for the purpose of effecting such assumed rights, interests or relations, or of carrying out such assumed duties or liabilities, equity will grant its relief, defensive or affirmative, treating, the mistake as analogous to, if not identical with, a mistake of fact.”
I have examined a number of decisions -which support the text above quoted. I deduce one equitable principle from the case of Snell v. Insurance Co., 98 U. S., 87, where an insurance company by reason of some representation made to the assured, had induced the latter to act under a mistake of law to the advantage of the company. The Supreme Court said:
“A court of equity could not deny relief under such circumstances without aiding the insurance company to obtain an unconscionable advantage through a mistake for which its agents were chiefly responsible. ’ ’
A splendid statement of the equitable principle is found in Griswold v. Hazard, 141 U. S., 260, where it was held by the Supreme Court of the United States that:
“An admitted or clearly established misapprehension of law in -the making of a contract creates a basis for the interference of a court of equity resting on its discretion, and to be exercised only in unquestionable and flagrant eases. ’ ’
*432 The court makes the statement in its opinion that the mistake under consideration there was attended by circumstances that rendered it inequitable for the other party to take advantage of it.
Haviland v. Willets, 141 N. Y., 835, is a well considered ease applying the rule where relief was granted touching a mistake of law where there was inequitable, unfair and deceptive conduct on the part of the other contracting party.
Titus v. Insurance Co., 97 Ky., 567 (53 Am. St., 426), was an illustration of relief granted to one who had acted in ignorance of the law where the mistake made was encouraged and induced by the party seeking to profit by it.
Kyle v. Fehley, 81 Wis., 67 (29 Am. St., 866), is an illustration of a case where relief was afforded to a woman who was unacquainted with the business forms and who had been induced by representations which were without, foundation, to make a certain. conveyance.
Renard v. Clink, 91 Mich., pp. 1 and 3, where the- text of Mr. Pomeroy above quoted was approved and applied.
I am of the opinion that the rules above set forth apply to the case now under consideration, and that the plaintiff acted not only upon a mistake of the law which prescribed the manner in which her rights in this estate should be worked out, but that she was entirely ignorant of the condition and value of the estate. It is made clear, too, by the petition that her errors in this respect were superinduced by representations that were made to her not only by the defendants named, but by the administrator as well.
My judgment is that by reason of the natural confidential relations existing between flesh and blood, between the' heirs who are defendants to this action and the plaintiff, the duty was imposed upon the latter in dealing with the widow in respect to her rights, of being eminently fair and just, and that they should not only have ascertained the facts and the law, if they did not already know them, but that they should have fully explained to her all of her rights which depended not upon the law but upon the actual facts relating to the condition and value of the property.
My judgment is that the petition states a cause of action and the demurrer is therefore overruled.