CASE 86—PETITION EQUITY—MAY 24.

# Titus v. Rochester German Insurance Company.

### APPEAL FROM JEFFERSON CIRCUIT COURT, CHANCERY DIVISION.

INSURANCE—SURRENDER OF PART OF CLAIM IN IGNORANCE OF LEGAL RIGHTS.—Where the holder of an insurance policy in ignorance of his legal rights and not as a compromise of a doubtful claim has been induced by the fraudulent misrepresentations of the company's agents to accept in satisfaction of his loss under the policy a smaller amount than was due him, a court of equity will, at his instance, rescind the contract by which he surrendered a part of his claim.

SIMRALL, BODLEY & DOOLAN FOR APPELLANT.

1. The agents of appellee having, by fraudulent misrepresentations, induced the appellant to enter into a contract to accept one-half of the amount of the damage to the property and surrender the policy, the contract entered into by reason of these representations of appellee's agents should be rescinded.

2. The appellant being ignorant of his antecedent rights under his policy of insurance, and being induced to believe by misrepresentations of appellee's agent, that he was not entitled under the law to recover the full amount of the loss sustained, and that any amount that he might receive on the policy was a matter of grace on the part of appellee, equity will grant relief from the contract into which he was thus induced to enter by reason of his ignorance of the law. (Kerr on Fraud & Mistake, pp. 81, 399, 400, 403, 404; Pomeroy's Equity Jur., (last ed.), secs. 849, 850, 851, 852; Story's Equity Jur., secs. 120-126, 130, 131; Bispham's Prin. of Equity, sec. 188; Dembitz Ky. Jur.; Fitzgerald v. Peck, 4 Litt., 125; Underwood v. Brockman, 4 Dana, 309-315; Ray v. Bank of Ky., 3 B. M., 513; Gratz v. Redd, 4 B. M., 190; City of Louisville v. Zanone, 1 Met., 153; Covington v. Henning, 1 Bush, 382; McMurtry v. Ky. Cent. R. Co., 84 Ky., 465; L. & N. R. Co. v. Hopkins County, 87 Ky., 613; London & Lancashire Ins. Co. v. Oaks & Cook, 15 Ky. Law Rep., 540; Webb v. City of Alexandria, 33 Gratt., 176; Whelen's Appeal, 20 P. F. Smith, 427; Bales v. Hunt, 77 Ind., 355; Sparks v. White, 7 Humphrey, 90.)

3. Appellee being fully advised at the time the policy was issued of

the incumbrance on the piano, it can not now be heard to complain that by reason of that incumbrance the policy was vitiated.

GIBSON, MARSHALL & LOCHRE FOR APPELLEE.

1. The policy of insurance issued to appellant, providing that if the property should be encumbered all insurance should cease unless in writing the company had consented to still continue liable upon the risk, and there being doubt as to whether or not this fact had been communicated to the company, the advice of appellee's adjuster to appellant that he accept one-half the amount of the damage to the piano was not a fraudulent misrepresentation, and the compromise contract should not be rescinded on that ground.

2. Ignorance of his rights under the law are not sufficient to set aside this voluntary written agreement of compromise entered into after deliberation and opportunity to investigate as to his rights on the part of the appellant. (Thompson v. Phoenix Insurance Co., 75 Maone, 55; Aetna Insurance Co. v. Reed, 33 Ohio State, 283; Mayhew v. Phoenix Insurance Co., 23 Mich., 105; American Insurance Co. v. Crawford, 7 Bradwell (Ill.), 29; Dunn v. Commonwealth Insurance Co., 3 Ins. L. J., 631.)

3. It appears from appellant's petition, in the absence of an allegation that there was a written indorsement that there was an incumbrance on the property insured, that the claim of appellant was a doubtful one, and the compromise agreement entered into by appellant and appellee comes within the rule laid down by this court in the case of McMurtry v. Kentucky Central R. Co., 84 Ky., 465 that "no recovery can be had when the parties regard the question of either law or fact as doubtful and make payment by way of compromise to avoid litigation."

4. The representation of appellee's agent that the incumbrance had vitiated the policy was not a fraudulent misstatement even if he had been mistaken in his opinion, which is by no means admitted, and, therefore, the ruling of the court in the case of the London & Lancashire Insurance Co. v. Oakes & Cook, 15 Ky. Law Rep., 540, is not decisive of this case. (15 Ky. Law Rep., 574; City of Louisville v. Anderson, 79 Ky., 339.)

JUDGE EASTIN DELIVERED THE OPINION OF THE COURT.

This equitable action was brought by appellant to rescind a contract made with appellee, by which, as alleged, he was induced to accept, in satisfaction of a loss under

a policy of insurance issued to him by appellee, an amount equal to one-half of that loss and to one-half of the amount of insurance named in the policy.

As grounds of rescission, the petition charges that appellant was ignorant of his legal rights under the policy and that, through fraud and imposition practiced upon him by appellee's agents, and by wilful misrepresentation made by them, as to his rights under the contract of insurance, he was induced to accept a part of his claim in satisfaction of the whole.

The chancellor sustained a general demurrer to the petition, and appellant declining to plead further, his petition was dismissed, from which ruling this appeal is prosecuted; so that the only question for consideration here is whether or not the facts alleged in the petition, and admitted by the demurrer, are sufficient in equity to entitle appellant to the relief sought.

The petition charges, in the fullest and strongest terms, appellant's ignorance of the rights and obligations of the parties under the policy of insurance, and full knowledge on part of appellee, both as to the rights of the parties and as to appellant's ignorance of them, as well as false and fraudulent misrepresentations made by appellee's agents for the purpose of deceiving, and which did deceive, appellant as to the validity of his claim under the policy. It charges, among other things, that appellee fully understood its liability to appellant for the full amount of his loss, that he was ignorant of the law governing his right and appellee's obligations, while appellee both knew his rights and knew that he was ignorant of them, and, with this knowledge and intending to deceive and defraud him, fraudulently represented to him that, by reason of an incumbrance on a part of the insured property, his entire claim under

the policy was forfeited; that these false representations were made to him by appellee for the purpose of deceiving and defrauding him, and that, by these false and fraudulent representations, and through ignorance of his legal rights, he was induced to accept the sum of four hundred dollars in satisfaction of a loss of eight hundred dollars, when, except for these fraudulent representations and his ignorance, he would not have done so.

These charges being admitted, it seems to us that the case presented involves something more than an effort to obtain relief purely on the ground of a mistake of law, or mere ignorance on part of appellant as to his legal rights under the contract of insurance.   It becomes, in addition to this, a case of actual fraud, where by fraudulent misrepresentations made for the purpose and with the intent to deceive, the known ignorance of one of the parties to the contract has been wilfully taken advantage of, and he has thereby been induced to surrender a valid, subsisting right without consideration.   It is true that the ignorance relied upon is an ignorance of law  rather than of fact, and that this is not always, or perhaps generally, and when standing alone, available as a ground of relief against an executed contract, no matter how inequitable it may be.   On this point the decisions of the courts of this country, as well as the English courts, are by no means uniform, but, in our opinion, the weight of authority and the decisions of this court would now forbid that a party, who, with full knowledge of the ignorance of the other contracting party, has not only encouraged that ignorance, and made it the more dense by his own false and fraudulent misrepresentations, but has wilfully deceived and led that other into a mistaken conception of his legal rights, should shield himself behind the

general doctrine that a mere mistake of law affords no ground for relief.

This view seems to be upheld by many, if not all, of the modern text writers, who are recognized as authority on the question.

Mr. Kerr, in his well-known work, in treating this subject says: "But if it appear that the mistake was induced or encouraged by the misrepresentation of the other party to the transaction, or was perceived by him and taken advantage of, the court will be more disposed to grant relief than in cases where it does not apear that he was aware of the mistake." (Kerr on Fraud and Mistake, pp. 399, 400.)

And, in his work on Equity, Mr. Bispham lays down this doctrine, in even stronger and less uncertain terms. He says: "Where ignorance of the law exists on one side, and that ignorance is known and taken advantage of by the other party, the former will be relieved. More particularly will this be so if the mistake was encouraged or induced by misrepresentations of the other party." (Bispham's Principles of Equity, sec. 188.)

Under the admitted facts of this case and the circumstances surrounding and leading up to the mistake relied on here, it is clearly brought within the text above quoted; and many other authorities to the same effect, including reported cases in many of the States of this Union, might be cited, if it were deemed necessary.

We fully recognize the wisdom of that rule which always inclines the courts to uphold and enforce the validity of voluntary compromises and adjustments between parties of their legal differences, when fairly arrived at. Nor would any mere ignorance of or mistake in the law governing any doubtful and disputed legal proposition, on part of either of the parties to the compromise, in the absence of evidence

tending to show that he has been over-reached or unfairly dealt with, or taken advantage of, and where supported by a good consideration, be sufficient, in our judgment, to justify the rescission of a compromise settlement, deliberately made between parties, standing upon an equal footing and with full knowledge of all the facts. If every mistake of law were sufficient to warrant the interference of the courts, then no compromise of a disputed legal proposition would be final, for, in every such case, one party or the other to the controversy is mistaken as to the law of the case.

Upon the record before us, there may be some question as to how far there was a controversy between these parties over any doubtful legal question that might have been litigated in court, or exactly what was the nature and extent of the same.

It is alleged in the petition that appellee claimed that all rights of appellant under his policy of insurance were forfeited, by reason of the existence of an incumbrance upon a part of the insured property; but it is further alleged that appellee, at the time the contract of insurance was made, "had full knowledge of the same, and having such knowledge, made the contract and issued the policy aforesaid." This allegation is admitted to be true, and, in the absence of anything further in the pleading, pertaining to this point, we are unable to see in this the basis of a doubtful disputed legal proposition which might have been litigated in the courts, or to know exactly what controversy was settled by the parties.

But, waiving the question as to the nature and extent of the controversy between appellant and appellee, and reverting to the character of the compromises which the courts will uphold, we now quote from another text writer who uses this language, to-wit: "Voluntary settlements are so

favored that if a doubt or dispute exists between parties with respect to their rights, and all have the same knowledge or means of obtaining knowledge, concerning the circumstances involving these rights, and there is no fraud, misrepresentation, concealment, or other misleading incident, a compromise into which they thus voluntarily enter, must stand and be enforced, although the final issue may be different from that which was anticipated, and although the disposition made by the parties in their agreement may not be that which the court would have decreed had the controversy been brought before it for decision. Of course there must not only be no misrepresentation, imposition or concealment; there must also be a full disclosure of all material facts within the knowledge of the parties, whether demanded or not by the others." Pomeroy's Equity Jurisprudence, sec. 850.

Under the authorities quoted it is manifest that the compromise contract sought to be rescinded here is within the control of a court of equity and may be set aside.

And now, referring to the decisions of this court and to the doctrine established in this State, it seems to us still clearer that the contract complained of, and which was made under the circumstances set forth in the petition and admitted by appellee, can not be sustained.

In an exhaustive opinion in which the authorities were ably reviewed by Judge Robertson, after referring to the difficulty of determining, in every case, when a contract was, in fact, made under a mistake of law, it is said: "When it can be made *perfectly evident*, that the only consideration of a contract was a mistake as to the legal rights or obligations of the parties, and when there has been no *fair compromise of bona fide* and doubtful claims, we do not doubt that the

agreement might be avoided on the ground of a clear mistake of law, and a total want, therefore, of consideration or mutuality." Underwood v. Brockman, 4 Dana, 309.

In the case of Ray and Thornton v. Bank of Kentucky, 3 B. Mon., 510, this court referred to and approved the above case and said: "Upon the whole we would remark that, whenever, by a clear and palpable mistake of law or fact essentially bearing upon and affecting the contract, money has been paid without cause or consideration, which in law, honor or conscience was not due and payable, and which in honor or good conscience ought not to be retained, it was and ought to be recovered back."

Both of these cases are cited with approval in the case of Louisville & Nashville R. Co. v. Hopkins County, 87 Ky., 613, and the doctrine laid down therein has not been departed from by this court.

It will be seen that the question of fraud did not enter into the decision of either of those cases, but that they are almost entirely based upon the fact that there was no good consideration to uphold the contracts, that it was not a fair compromise of bona fide and doubtful claims, and that the money was not in law, honor or conscience payable, and ought not in honor or good conscience to be retained. If for these reasons a contract, made under a clear mistake of law, may be set aside, then how much stronger reason is there for annulling the contract under consideration. Not only was this contract, according to this record as it comes before us, wholly without consideration, and not only was the money surrendered by appellant on his claim, not due in law, honor or conscience, and surrendered only under a clear mistake of law, but it is further admitted by the demurrer that this contract was obtained, and that appellant was induced to surrender one-half of his claim, by the actual

false and fraudulent misrepresentation of appellee, knowingly made for the purpose of deceiving and defrauding appellant.

We are clearly of the opinion that the chancellor erred in sustaining the demurrer to the petition, and for the reasons indicated, his judgment dismissing appellant's petition is reversed and the action is remanded, with directions to set aside that order and to overrule the demurrer and give appellee leave to file an answer.