## Broadway Coal Mining Company, et al. v. Ortkies.

(Decided June 22, 1923.)

### Appeal from Ohio Circuit Court.

1. Appeal and Error—Failure to Submit Issue of Fraud in Obtaining Release From Plaintiff is Not Prejudicial to Defendants.—Where plaintiff sought to avoid a release of liability executed by him on the ground of fraud and want of capacity, and there was some evidence tending to support the allegations of fraud, defendants' rights were not prejudiced by the court's failure to submit the issue of fraud to the jury.

2. Damages—$4,000.00 for Injuries to Coal Miner, Rendering Him an Invalid, Held Not Excessive.—Where the plaintiff before his injury was an able-bodied miner, earning almost $5.00 a day, and after his injury from a fall of slate upon him was a helpless invalid, wholly unable to support himself up to the time of the trial, many months after the injury, a verdict awarding him $4,000.00 as damages was not excessive.

3. Release—Evidence Held to Sustain Verdict Finding Incapacity to Execute Release.—In an action for injuries to a coal miner, when a piece of slate fell on his head and shoulders, evidence by experts and lay witnesses as to plaintiff's mental condition at the time he signed a release of all liability for his injuries held sufficient to sustain a verdict finding he was mentally incompetent to execute the release, under the rule that a verdict will not be disturbed, if there was sufficient evidence to carry the case to the jury, unless clearly and palpably against the weight of the evidence.

4. Evidence—Declaration in Plaintiff's Presence by His Wife Held Properly Excluded.—In an action for personal injuries, it was not error to exclude from evidence a declaration made by plaintiff's wife in his presence, to the doctor who was examining his injuries, that she did not want plaintiff to get well until after the trial, to which remark plaintiff made no reply, where there was no evidence that plaintiff heard the remark, or, if he heard it, understood its meaning.

5. Release—Payment Must be Tendered Back, Unless it is for Loss of Time or Medical Attention.—As a rule, money paid in an effort to compromise a claim for damages for personal injuries must be paid back before the commencement of the action; but, if the payment is for loss of time or medical attention, the rule does not apply.

6. Release—Failure to Tender Return of Money Held Not to Prejudice Substantial Rights of Defendants.—The substantial rights of defendants were not prejudiced by plaintiff's failure to tender a return of the money paid to him in full settlement of his claim before bringing suit, where the reply, seeking to avoid the settlement for fraud and want of capacity, tendered a return of the money, which was refused, and the court, at defendant's request, credited on the amount allowed plaintiff the sum previously paid under the settlement.

7. Release—Instruction on Mental Capacity to Execute Held Correct.—An instruction to find for the defendant under the settlement agreement, unless the jury believed from the evidence that when plaintiff signed the contract he did not have mental capacity sufficient to understand the nature and effect of the contract, and if they found plaintiff did not have mental capacity sufficient to understand the nature and effect of the contract not to find against him on account thereof, substantially presented to the jury the issue of mental incapacity as avoidance of the release.

J. S. GLENN and BARNES & SMITH for appellants.

HEAVRIN & MARTIN for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON—Affirming.

The judgment assailed on this appeal as erroneous was rendered in the Ohio circuit court in an action by appellee, Ortkies, against the Broadway Coal Mining Company and its foreman for damages for personal injuries resulting to Ortkies by a fall of slate and rock from the roof of the main entry of appellant's coal mine on to his head while he was on his way to his regular working place and was at a place where the appellant company should have anticipated he would be and where he had a right to be. It was a shaft mine in which a large number of men worked. They were all lowered by machinery. A great deal of coal had been mined, so that appellee's working place was about one and one-half miles underground from the shaft. It was the custom and usage of the company to carry the men by mine cars from the shaft to their working places. These cars were usually standing near the shaft. On the occasion of appellee's injury

the cars were gone and appellee had to wait with other workmen until another load was made up; some two or three men were sitting in a car waiting for the next trip when appellee walked up and inquired about cars. Scarcely had he stopped and finished his inquiry about the cars until a large flat piece of slate or rock fell from the roof of the main entry, striking him on the head and knocking him to the ground. It weighed several hundred pounds. He was injured in his head, neck, back and other parts of his body. For some time immediately after the injury he was unconscious. Blood oozed from his nose, mouth and ears. He suffered a concussion of the brain and perhaps a fracture of the skull at its base. He was confined to his bed for several weeks, and after he was able to go about he was so weak and helpless as to be unable to perform any labor up until the time of the trial, which happened many months after the injury.

The coal company was not operating under the compensation act and was not therefore entitled to plead contributory negligence, negligence of a fellow-servant, or that the injured person assumed the risk of the injury, as a defense to an action like this.

By answer both the company and the mine foreman traversed most of the essential averments of the petition and pleaded contributory negligence on the part of the appellee. They further pleaded that on the first of April, 1920, by mutual agreement the company settled with appellee for the injury and damages sustained by him and paid him the sum of $800.00 in full satisfaction of all claims arising out of said injury, and that by the said written agreement appellee had released the company from all claims for damage on account of the injuries inflicted by the fall of slate; that appellant company had paid to appellee the sum of $800.00 and took from him the following receipt:

"Simmons, Ky., April 1, 1920.

"Received of Broadway Coal Mining Company, eight hundred and no/100 dollars ($800.00) in full settlement of all claims for injuries and damages of whatever kind and description suffered by me by reason of accident while in their employ on or about the twenty-second (22) day of December, 1919. Said injuries being caused by

slate falling on my head, and in full of all demands to this date.

"I. C. Ortkies.

"Witnesses:
      W. W. Simmons,
      George M. Burton."

By reply appellee assailed the compromise agreement as well as the writing set forth above, for fraud and deceit no less than upon the ground that at the time of its execution on April 1, 1920, his mental condition was such that he was unable to understand and appreciate the nature, extent and effect of said agreement and writing, and that he did not know that the said writing was intended to be a full release of his claim against the company for his injuries, but that he thought it was merely a release for his claim for loss of time only; that he would not have signed the same had he understood and known the purport, intent or purpose of the said writing. Issue was joined upon the questions presented by the reply.

The jury returned a verdict in favor of appellee, Ortkies, for the sum of $4,000.00. Upon hearing the court credited, at the instance of appellant company, this sum by $800.00 which the company had furnished to appellee during his sickness and paid to him in satisfaction, as it claims, of his entire cause of action.

The company and its foreman insist that the judgment should be reversed because (1) there was no evidence to impeach the compromise contract on the grounds of fraud, misrepresentation or undue influence; (2) appellee had sufficient understanding to know he was signing a release in full of his claim; (3) the introduction of incompetent evidence on behalf of appellee; (4) the refusal of the court to allow appellants to introduce competent evidence in their behalf; (5) appellee did not tender back to the company before bringing his action the $800.00 which he received on the alleged compromise; (6) the instructions were erroneous and misleading.

While there was some evidence tending to support the averments of the petition that the alleged compromise agreement was obtained by fraud, misrepresentation and undue influence, this question was not submitted to the jury, for which reason appellants' rights could not have been prejudiced.

Appellants insist very earnestly that the overwhelming weight of the evidence shows that appellee had mental capacity sufficient to fully understand and to know he was signing a release in full of his claim for damages at the time he signed the contract in question. It also insists that the compensation paid to him was entirely adequate and that the verdict of the jury was excessive and flagrantly against the weight of the evidence. To recite all the facts concerning his injury would serve no useful purpose here. It will be sufficient to say that Ortkies at the time of his injury was a strong, able-bodied man in the full strength of his years, earning almost $5.00 per day; that after his injury he was a helpless invalid, wholly unable to support his family but compelled to rely upon them not only to support him but to take care of him in his feebleness. On the other question, as to whether the evidence supports the verdict, or, is overwhelming against the verdict, there is room for argument. Several physicians testified on one side or the other, and they do not agree as to the mental status of appellee at the time of the making of the agreement. In addition to the expert testimony there were a large number of non-expert witnesses who saw and knew appellee before his injury and at the time and later, and who related facts concerning his acts and conduct, his condition and manner, and expressed their opinion upon his mental condition at the time of the making of the writing. These witnesses in giving their opinion based upon facts stated by them also differed widely. Dr. Gardner, who runs a sanatorium in Louisville and deals with patients afflicted with nervous and mental trouble, examined and treated appellee through several weeks. In testifying he says that for some cause or other appellee Ortkies was suffering from melancholia; that his mental condition was weak and that he did not act like a normal person. He points out in a very comprehensive way the many different symptoms which evidenced mental derangement on the part of Ortkies about the time of the making of the compromise agreement. He expressed the opinion, in answer to a hypothetical question containing plaintiff's theory of the facts, that Ortkies did not have sufficient mental power to comprehend, understand and enter into an agreement such as the alleged compromise, at the time the same is alleged to have been made. Quite a number of Ortkies' neighbors who had known him before his injury and had watched him through his sickness testified that he was

wholly unable to understand and appreciate the nature, character and extent of an obligation such as the one under consideration; that his mind was wandering; that his memory was very poor and that he seemed to be brooding or under the spell of melancholia. His family testified he would run away from home to avoid intercourse with normal persons, and would lose himself; that he was frequently found crying; that he talked vaguely and queerly; that he could not sleep and he had no appetite.

On the other hand there was a great deal of evidence by physicians as well as by laymen tending to prove the opposite. Indeed, it is hard to tell from the great volume of evidence which way the evidence preponderates upon this issue; but inasmuch as there was sufficient evidence to carry the case to the jury we are not allowed to disturb it under our rule requiring us to sustain verdicts unless clearly and palpably against the weight of the evidence. There was little or no incompetent evidence so far as we can discover offered by appellee in his behalf, and which was allowed to be heard by the jury. Appellants complain that they were not allowed to prove by Dr. Riley that while he was making an examination of appellee before the trial of the case that his wife (appellee's) in his presence and hearing said to the doctor in substance that she did not want him to get well until after the trial, to which remark appellee made no reply. Whether he heard it or understood it is not shown. If, as contended by his counsel, appellee was suffering from melancholia or other mental deficiency it could hardly be expected that he would have understood what she was saying, or if comprehended would have protested against her remark. Undoubtedly the trial court proceeded upon the theory that appellant did not hear or understand the remark, and it was clearly incompetent in the absence of a showing that he did hear, understand and appreciate the nature of her statement at the time it was made.

As a rule, often confirmed by this court, money paid in an effort to compromise a claim for damages must be tendered back before the commencement of the action if it be for personal injury; but if it be for loss of time or medical attention, this rule does not apply. We will not go into a discussion of this question since appellants, after the return of the verdict, moved the court to credit it with the sum of $800.00 which appellants claim they

had advanced to appellee under a compromise agreement and in payment of doctors' bills, and the judgment was so credited with this amount by the trial court, on their motion. Moreover, appellee tendered back to appellants in his reply filed immediately after the answer setting up the compromise, the whole amount paid by appellants to him, and this was refused. All of the facts considered we do not think the substantial rights of appellants have been invaded by the ruling of the trial court upon this subject.

We find no substantial error in the instructions of the court. The one of which appellant chiefly complains is No. 8, with respect to the mental capacity of appellant to enter into a compromise agreement. The court directed the jury to find for the company under the settlement agreement "unless you shall believe from the evidence that when plaintiff signed the said paper or contract, he did not have mental capacity sufficient to understand the nature and effect of the said contract, and if you believe from the evidence that the plaintiff did not have mental capacity sufficient to understand the nature and effect of the said contract, then you should not find against him in this case on account of having made said contract." We think that the instruction substantially presented the law of this issue.

For the reasons indicated the judgment is affirmed.