## BANKERS' HEALTH & ACCIDENT CO. OF AMERICA v. SHADDEN. (No. 460.)

Court of Civil Appeals of Texas. Eastland. March 8, 1929.

Rehearing Denied April 12, 1929.

J. T. Ranspot, of Mineral Wells, and Mack & Mack, of Fort Worth, for appellant.

T. P. Perkins, of Fort Worth, John C. Miller, of Mineral Wells, and Penix & Penix, of Wichita Falls, for appellee.

LESLIE, J. The appellant, Bankers' Health & Accident Company of America, insured William H. Shadden in the sum of $1,000 against loss resulting "directly, independently and exclusively from bodily injuries, solely through mechanical, external, violent and accidental means, except suicide, etc." His wife, Annie Shadden, was the beneficiary in the policy, the plaintiff below and appellee here. A purported settlement was made with her, whereby she received $100 and $5 unearned premium, and in consideration thereof she executed a release of the claim in full. In this suit credit upon the face of the policy was allowed for the sum so received, and she sues for the balance, amounting to $900. The defendant answered by general denial, and set up this settlement, which she sought to avoid upon the ground

that it was effected by fraud, and that, in any event the settlement was the result of a mutual mistake upon the part of herself and the company.

At the conclusion of the trial the defendant requested an instructed verdict in its behalf. This was refused by the court, who, at the same time, instructed a verdict in favor of the plaintiff, and this appeal follows.

The deceased, William H. Shadden, was a man approximately 50 years of age, in good health, a United States mail carrier by occupation, and had been so employed for a considerable time prior to his death. He distributed the mail along his route by means of a Ford car. On the morning of January 25, 1926, a cold and disagreeable morning, he was unable to start his car by means of the self-starter, which failed to function, and he undertook to crank the same in a manner usual and necessary in the starting of the car under such circumstances. It seems to have required a very disagreeable effort to start the vehicle on this occasion, and something like an hour was consumed in the effort to do so. The car had failed to function in somewhat the same manner on the preceding Saturday morning. However, on the morning of the 25th, the car was finally started, but in accomplishing this the said Shadden appears to have sustained injuries resulting in his death. According to the doctor's testimony the death resulted from dilation of the heart, due to exertion and strain in the cranking of the car.

In the deceased's effort to start the car and immediately thereafter he became greatly worried, his face flushed and red, and he hemorrhaged at the nose and mouth. He left home without eating his breakfast, and soon started on his route to deliver mail. While en route he was approached by a friend who testified: "He looked pale and I said 'Mr. Shadden, there is something bad the matter with you,' and he said 'I cranked my old Ford for about an hour before I left and it seems like I tore something loose inside me.'"

Those who came in contact with him at once detected his abnormal condition, and they endeavored to revive him by walking him about the road, after which he was taken to the home of a friend and a physician summoned. An effort was made at once to remove him to his home, but he died on the way.

The cranking of the car was evidently the means by which the deceased's injuries were sustained. In the cranking of the Ford car, an act, not unusual nor ordinarily deadly in its effect, something unforeseen, unexpected, and unusual occurred, which produced the injury resulting in the death of the deceased, and it is our conclusion that his death, under the circumstances, resulted through mechanical, external, violent, and accidental means, according to the terms of the policy sued on.

Such conclusion is based upon the following authorities: Bryant v. Continental Casualty Co., 107 Tex. 582, 182 S. W. 673, L. R. A. 1916E, 945, Ann. Cas. 1918E, 517; Mutual Accident Ass'n v. Barry, 131 U. S. 109, 9 S. Ct. 755, 33 L. Ed. 60; Pledger v. Business Men's Accident Ass'n of Texas (Tex. Com. App.) 228 S. W. 111; Horsfall v. Pac. Mutual Life Ins. Co., 32 Wash. 132, 72 P. 1028, 63 L. R. A. 425, 98 Am. St. Rep. 846.

Aside from the facts detailed, we are justified in regarding the record as establishing the foregoing conclusion, for the reason that the appellant presents no propositions complaining of the failure of the court to submit an issue inquiring whether or not the deceased Shadden in fact cranked the car as alleged, or whether, in fact, dilation of the heart resulted from such act. Therefore, we may conclude that the undisputed evidence discloses that Shadden's death was brought about by heart dilation, cause by over exertion in cranking the Ford car as alleged, and as abundantly supported by the evidence detailed. Further, the appellant does not challenge the sufficiency of the evidence to establish said conclusion or to raise an issuable fact with reference thereto, but merely contends that such fact does not establish the death solely by mechanical, external, violent, and accidental means. Therefore, with the foregoing facts established and under the record apparently conceded, we pass to the consideration of the controlling question involved in the action of the court in peremptorily instructing a verdict in favor of the plaintiff.

We are not unmindful of the sacredness of jury trials and the rights of litigants to have questions of fact submitted to the jury for its determination. We are also aware that, in determining whether or not there were issues to be submitted to the jury, it is our duty to disregard the testimony of the appellee and look solely to that relied on by the appellant. If it in truth raised an issuable fact, that should have been passed to the jury, and, under such circumstances, it would be our duty to reverse the judgment and return the cause for another trial.

In this case the policy evidenced a liquidated claim in the sum of $1,000. The beneficiary appears to have adjusted the claim for the sum of $100 and the return of the unearned portion of the premium. A receipt in full evidencing such settlement was executed by her, and this settlement and such executed release were pleaded by the defendant as a bar to her right to recover the balance on the policy. The release and settlement were sought to be avoided on the grounds of fraud and mutual mistake.

The appellant's chief contention is that its agent was in good faith in effecting the settlement and honestly believed there was no liability under the terms of the policy accru-

ing from the death of William H. Shadden, and, since the settlement had been effected by .such agent, who held a bona fide belief that no liability existed, or in any. event liability was doubtful, such settlement in pursuance thereof should be upheld, and that the court erred in refusing to submit to the jury the is-sue as to whether defendant's agent urged said defense in good faith. Franklin Life Insurance Co. v. Villeneuve, 25 Tex. Civ. App. 356, 60 S. W. 1014; Id., 29 Tex. Civ. App. 128, 68 S. W. 203, is cited and relied on to sustain its contention. For reasons hereinafter stated and by reason of the uncontradicted nature of the testimony, we do not believe the issue indicated was in this case or determinative of it. This is a case of fraud conclusively demonstrated by the testimony of the appellant alone. This court has carefully read and re-read the appellant's testimony, coming almost exclusively from its general adjuster. We have been inclined to set this testimony out in full, but it would serve no useful purpose to so incumber the record and unnecessarily lengthen this opinion. Suffice, it to say that to our minds said testimony presents a picture of a legal fraud, perpetrated by an insurance adjuster (of 26 years' experience), upon a widow of limited education, without training in matters of business, wholly unacquainted with the exclusions, inclusions, and highly technical phases of an accident insurance policy, with practically no understanding or comprehension of the facts involved, or her legal rights thereunder, and over whom the clouds of bereavement, by reason of her husband's recent death, were still hovering. Thus circumstanced, the appellee was no match for the trained adjuster, and it is not surprising that she signed the release and surrendered the policy evidencing her legal rights.

The crowning argument or logic by which Mrs. Shadden was induced to execute the release and settle for a mere pittance of the amount called for by the policy may best be expressed in the language of said adjuster: "I have had twenty-six years experience in this line of business. * * * I says, 'Mrs. Shadden, if you don't make a settlement with me, I am not very hard and I do the best I can and try to be as near right as I can, but' if you don't make a settlement with we, you are going to have to fight with my company and they are not going to pay you a dime, and if you go to an attorney with this, your attorney won't get enough of it to pay their fee.' * * * I also did pass the remark, 'there is another thing with these insurance companies, that where there is any doubt about an accident they remove the body from the grave and have it examined.' I said 'there is no liability in this case, and another thing, there is no external marks on the body.'"

Under the indicated circumstances it is not surprising that this adjuster was able to testi-fy further: "I told her down there I had found out the conditions and this policy didn't cover it, she came to the same conclusions after hearing my statements to her and we both acted on that and that was the reason I got the policy and paid the money."

In this case appellant makes some contention that fraud cannot be predicated upon mere expressions of opinion, or for a misrepresentation as to the matter of law equally open to the inquiry of both parties. It is the general rule that ignorance of the law excuses no one, but our Supreme Court, through Justice Wheeler, in Moreland v. Atchison, 19 Tex. 303, uses this language:

"The general rule, it has been truly said, is justified by considerations of public policy; and yet so harsh a rule, founded upon a presumption so arbitrary, ought to be modified in its application, by every exception which can be admitted without defeating its policy. * * *

"Admitting the rule that ignorance of the law, with a knowledge of the facts, cannot generally be set up as a defense, * * * there are other elements in the present case, which bring it within the exceptions, or take it out of the operation of the rule, and entitle the party to relief. It is not a case of mere ignorance of law, unmixed with fraud and ignorance of fact. There was both fraud and ignorance of fact, as well as law. And it has been the constant practice of Courts of Chancery to grant relief, where the case did not depend upon a mere mistake of law, stripped of all other circumstances, but upon an admixture of other ingredients, going to establish misrepresentation, imposition, undue confidence, undue influence, or advantage taken of another's situation. * * * There was, in this case, misrepresentation and fraud, if corruptly deceiving one, as to matter of law, amounts to fraud, in a legal sense; and we do not doubt that it may, where, as in this case, advantage is taken of the ignorance of the party."

The facts of the case quoted from are not identical with those under consideration, but the doctrine announced is a wholesome one and applicable to the case in hand. In the instant case the lines of demarkation between misrepresentation of fact, misrepresentations in matter of law, and loose expressions of mere opinions are not distinct, but in these respects and other matters relative thereto the adjuster exhibited a recklessness of speech wholly inconsistent with the plea of good faith and fair dealing. And, aside from Mrs. Shadden's evident ignorance of the law governing her rights in the premises, it may truthfully be observed that this record, too, reveals a strange admixture of other ingredients going to establish misrepresentation, imposition, undue confidence, undue influence, and advantage taken of her situation, all of which conclusively appears from the appel-

lant's testimony, and establishes the fact that she executed the release in question under a misapprehension of her rights, as alleged in her petition. Under such circumstances the release will not be upheld, as may be seen from the following authorities: Moreland v. Atchison, supra; Ramey v. Allison, 64 Tex. 697; Altgelt v. Gerbic (Tex. Civ. App.) 149 S. W. 233 (writ refused); St. Paul Fire & Marine Ins. Co. v. Pipkin (Tex. Civ. App.) 207 S. W. 361, 362 (3); Leslie v. City of Galveston (Tex. Civ. App.) 226 S. W. 438; Titus v. Rochester German Ins. Co., 97 Ky. 567, 31 S. W. 127, 28 L. R. A. 478, 53 Am. St. Rep. 426; Berry v. American Central Ins. Co., 132 N. Y. 49, 30 N. E. 254, 28 Am. St. Rep. 548.

Further, in the case at bar, we have evidently concluded that there is no evidence upon which a jury could predicate a verdict in favor of the appellant. As stated in Baulec v. Ry. Co., 59 N. Y. 356, 17 Am. Rep. 325: "It is not enough to authorize the submission of a question, as one of fact, to a jury, that there is 'some evidence.' "

Therefore, if it could be said that the record before us contains "some evidence" in a sense supporting the appellant's contentions of good faith, on the part of its agent in urging nonliability on the policy, and "some evidence" in a sense refuting the charge of fraud, yet such protestations of good faith and innocence from such charges are so irreconcilable with his testimony as a whole, and, in view of his long experience and undoubted knowledge in the business, and the frankly admitted oppressive methods used in effecting the settlement, it is believed that the trial court was justified under the rule announced by Judge Denman in Joske v. Irvine, 91 Tex. 574, 44 S. W. 1059, in treating the appellant's testimony as presenting no evidence whatever on the issues claimed by the appellant to be involved and ignored in the trial below. In the last-cited case our Supreme Court laid down the rule by which we are governed, and which should control trial courts in directing verdicts, as follows: "From a careful examination of the cases it appears, (1) that it is the duty of the court to instruct a verdict, though there be slight testimony, if its probative force be so weak that it only raises a mere surmise or suspicion of the existence of the fact sought to be established—such testimony in legal contemplation falling short of being 'any evidence,' and (2) that it is the duty of the court to determine whether the testimony has more than that degree of probative force. If it so determines the law presumes that the jury could not 'reasonably infer the existence of the alleged fact' and 'that there is no room for ordinary minds to differ as to the conclusion to be drawn from it.' The broad and wise policy of the law, formed in and descending to us through the crucibles of time, does not permit the citizen to be deprived to his property, his liberty or his life upon mere surmise or suspicion, and places upon a trained judiciary the grave responsibility of determining, as a question of law whether the testimony establishes more."

This meets the requirements of the situation before us, since we are of the opinion that the probative force of the appellant's testimony does not raise, if anything, more than a mere surmise or suspicion of the existence of good faith upon his part in effecting the settlement with Mrs. Shadden, and its testimony is no stronger when sought to be used to refute the charges of fraud hurled against it.

Under the facts of this case we do not believe that reasonable minds would reach a different conclusion, and under the following authorities and those cited the instructed verdict must be approved: Wills v. Central, etc., Co., 39 Tex. Civ. App. 483, 88 S. W. 265, 270; Harpold v. Moss (Tex. Civ. App.) 106 S. W. 1131–1133; M. K. & T. Ry. Co. of Texas v. Williams (Tex. Civ. App.) 117 S. W. 1045; Dayton Lumber Co. v. Stockdale, 54 Tex. Civ. App. 611, 118 S. W. 806, 807; Rogers-Hill Co. v. San Antonio Hotel Co. (Tex. Civ. App.) 7 S.W.(2d) 601–607; Nordyke et ux. v. Wright (Tex. Civ. App.) 11 S.W.(2d) 385–388.

This opinion has discussed the points presented by each of the six propositions urged by appellant. Believing them to be without merit, we do, for the reasons assigned, overrule them, and the judgment of the trial court is affirmed. It is so ordered.