## Toppass v. Perkins' Administratrix.

(Decided Feb. 16, 1937.)

188

J. MARSHALL McCANN for appellant.

L. W. MORRIS and MARION RIDER for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

The appeal is by Charles Toppass from a judgment for $5,000 rendered against him in favor of the administratrix of the estate of Velma Perkins, deceased, for damages for her death in an automobile accident. The suit was prosecuted against Toppass and Raymond Saunders, but the verdict was in favor of Saunders. The suit of George Hodges and Ethel Long against both defendants for injuries sustained in the same accident were tried with this case. Miss Long received a judgment for $200 against Toppass, which is not appealed, but the verdict went against Hodges. The place of the accident was about three miles from Frankfort at what is known locally as Black's Pond. There is no claim on appeal that the defendant was not negligent.

1. We have a novel situation. The defendant, who was driving his own car, insists that he was drunk, and his condition caused the accident. The plaintiff insists

the driver was not drunk. The anomaly arises from the defense of contributory negligence on the part of the decedent in having become the guest of the defendant knowing him to be intoxicated.

The parties were friends living in the Thorn Hill section of Frankfort. On Saturday afternoon, June 2, 1934, Velma Perkins and Ethel Long went to the business part of the city and there saw Toppass and Hodges sitting in the former's automobile. Toppass offered to drive the young women home and they got in the rear seat with Hodges. He drove around a square and instead of going to Thorn Hill, went up the Georgetown and Lexington road over their protest. Toppass insisted that Miss Perkins get in front with him and she climbed over there while the car was in motion. About that time he began driving very fast. The young ladies began screaming and calling upon him to stop and let them out. Hodges called upon him to slow down. Continuing towards Georgetown at a terrific rate of speed, Hodges reached over from the rear seat to turn off the ignition key, but the speed of the car going around a curve threw him off his balance. About that time the machine struck the approaching car of Saunders. Such is the evidence for the plaintiff.

Toppass testified that Hodges had asked him to drive the party to Stevens' road house and there was never any purpose to take the young ladies home. They were out for a joy ride. He says there was no screaming or demand that he stop. Toppass related what took place until, as he said, he indistinctly remembered seeing the Saunders' car approaching. He knew nothing more.

According to Toppass and Hodges, each of them had had five or six drinks of moonshine and of drug store whisky since noon. Toppass was not sure whether they had drunk a pint or a quart together. Witnesses at the scene of the accident stated that both men were drunk. William Hieatt, who was talking to the men just before the two girls came up, had declined to take a drink with them. He saw no liquor, although he could tell that the men were drinking. Miss Long is very positive that she smelled no odor of liquor before she and Miss Perkins got in the car and says that Toppass did not appear to have been drinking. She first detected the odor when Hodges was thrown over against

her by the car going too fast around a curve. Hodges testified that Toppass had been driving in and around the city during the afternoon without difficulty and that he was not drunk, which condition he says is when a man staggers. But Toppass himself testifies he was drunk. As to whether or not the defendant was entitled to a directed verdict upon the ground that the plaintiff was guilty of contributory negligence as a matter of law, of course, depends on the consideration of the evidence viewed in the light most favorable to the plaintiff. The disposition of this point may well be made in connection with the argument that the instruction on contributory negligence was erroneous to the prejudice of the defendant's substantial rights. The instruction given is as follows:

"The court instructs the jury that it was the duty of the plaintiff's intestate, Velma Perkins, at the time, place and on the occasion mentioned in the evidence, to exercise ordinary care for her own safety; and if the jury believe from the evidence that at the time the plaintiff's intestate, Velma Perkins, entered or got into the automobile of the defendant, Charles Toppass, the plaintiff's intestate, Velma Perkins, knew or by the exercise of ordinary care could have known, that the defendant, Charles Toppass, was *so intoxicated as to be unable to properly manage, operate or control his car;* or if the jury believe from the evidence that the decedent, Velma Perkins, after beginning the journey, which allegedly resulted in her death, knew; or by the exercise of ordinary care could have known, that the driver of said automobile was *so intoxicated as to be unable to properly manage, operate or control his car,* and failed to call upon the driver of said car to stop and to permit her to alight therefrom; or if the jury believe from the evidence that the decedent, Velma Perkins, after beginning the journey, which allegedly resulted in her death, failed to take any reasonable precaution, which by the exercise of ordinary care she should have taken, to avoid injury to herself, then, or in either event, she was guilty of contributory negligence, and the law is for both of the defendants, and the jury so believing will find for both of the defendants."

The argument is made that the qualification (which

we have italicized) places too great a burden upon the defendant in proving contributory negligence.

There are two questions of fact involved in the matter of contributory negligence of the guest in cases of this kind. One is that the driver was intoxicated, and the other is that the guest knew or ought to have known of his intoxication. In reality, the claim of the plaintiff was not that Toppass had not been drinking and was not thereby intoxicated in some degree. It is that she was wholly unaware of it when she accepted his invitation to ride and had protested his conduct and did all she could to escape when he became reckless. As was said in Winston's Adm'r v. City of Henderson, 179 Ky. 220, 200 S. W. 330, 332, L. R. A. 1918C, 646:

"One who voluntarily permits himself to be driven about the streets in a motor car operated by a drunken chauffeur does not exercise ordinary care for his own safety, and he assumes the danger incident to such drive when he voluntarily places himself in a car which is managed and controlled by an intoxicated driver. This is not because of the imputed negligence rule, but because of the personal negligence of the passenger."

And further:

"Even while prosecuting a journey if the driver becomes intoxicated so as to lose control of the vehicle, or is reckless, and this is known to the passenger, ordinary care requires the passenger to call upon the driver to stop and allow him to alight, or turn the management of the vehicle over to another capable of properly directing it, and if the passenger fails to exercise such care and is injured as a result of the negligence or recklessness of the driver and a third person, he may not have recourse of such third person, this being denied him because of his own negligence rather than upon the ground that the negligence of the driver is imputed to him."

In W. F. Robinson & Son v. Jones, 254 Ky. 637, 72 S. W. (2d) 16, 19, it is truly said:

"It is known of all men that the drinking of intoxicating liquor, though it be not done to the extent of actual intoxication, begets a spirit of reck-

lessness, and is responsible for numerous accidents."

It was held that evidence of the intoxication of the driver of an automobile involved in an accident should go to the jury in connection with other circumstances on the question of negligence and contributory negligence. See also Brady v. B. & B. Ice Co., 242 Ky. 138, 45 S. W. (2d) 1051.

While the standard of duty of a guest is the same as that of the driver, namely, to exercise ordinary care, the conduct required to fulfill that duty is ordinarily different because the circumstances are different. Precautions to be taken by the passenger are in any event less than those required of the driver. Chambers v. Hawkins, 233 Ky. 211, 25 S. W. (2d) 363; Haller's Pet Shop v. Pearlman, 253 Ky. 130, 69 S. W. (2d) 9.

In the exhaustive treatment in 4 Blashfield's Cyc. of Automobile Law (Permanent Ed.) sec. 2453, of the subject of contributory negligence of a guest or passenger in an automobile driven by an intoxicated person, the reference as taken from the opinions of the courts vary in terms as to the intoxication or degree thereof. We accept as a correct rule of practice that:

"Usually it is a question of fact whether a driver was so far intoxicated at the time of an accident as to affect his ability to operate the car, and whether his passenger had any cause, in the exercise of ordinary care, to be apprehensive on that account for his own safety."

Whether or not an instruction not requiring the jury's belief that the driver was intoxicated to the extent described in the instruction given here would be proper where the evidence disclosed that he had merely been drinking, and was not really and perceptibly under the influence of liquor, we will await a case of that kind before deciding. Here the defendant himself proved a high degree of intoxication. He cannot complain if the jury was required to believe he was in such a state that he could not prudently operate his machine in order to find the decedent assumed the risk of riding with him. We are of the opinion that the instruction was correct under the evidence.

The evidence as to the knowledge and participation

of the young lady in the adventure distinguishes the case from Archer v. Bourne, 222 Ky. 268, 300 S. W. 604. It was properly submitted to the jury on the conflicting evidence.

2. It was upon the motions of Hodges and Ethel Long that their cases were tried with the Perkins case. The defendants objected. The appellant submits that the joint trial operated to his prejudice. It has been often stated that cases arising from the same accident where the defendants are the same and the issues are substantially so should be tried together if the court concludes that no undue advantage may be obtained by one or the other party by reason of the joint trials. That has been found to obtain in the joint trial of separate suits of a husband or wife because neither was a competent witness for the other. Sheetinger v. Dawson, 236 Ky. 571, 33 S. W. (2d) 609; Hirsch v. Warren, 253 Ky. 62, 68 S. W. (2d) 767. In these cases there was no such incompetency, for each plaintiff was competent to testify not only in his own case, but in the other two cases as well. It was not error to try the cases together. Horton v. Herndon, 254 Ky. 86, 70 S. W. (2d) 975; Warfield Natural Gas Co. v. Wright, 246 Ky. 208, 54 S. W. (2d) 666; City of Ashland v. Queen, 254 Ky. 329, 71 S. W. (2d) 650.

3. The defendant pleaded compromise and settlement and filed a release executed by the plaintiff. Avoidance upon the ground of misrepresentation and fraud was pleaded in reply. A tender of the money paid was offered in the pleading and actually made in open court and declined by the defendant. The appellant insists that his demurrer to the reply should have been sustained upon the grounds, (a) a tender or refund of money paid in settlement and for release is a condition precedent to the bringing of the suit on the cause of action, and (b) the facts alleged do not constitute fraud.

(a) The accident was on June 2, 1934. The release was signed June 9th. Suit was filed August 6th and the tender made April 15, 1935, when the reply was filed in due course. Some of our opinions have expressly stated without qualification or distinction that repayment or a tender of money paid for a release must be made before bringing the action. Cf. Louisville & N. R. Co. v. McElroy, 100 Ky. 153, 37 S. W. 844, 18 Ky. Law Rep. 730. In certain cases arising ex contractu,

however, there are exceptions where no tender of restoration is necessary. See Fox v. Hudson's Ex'x, 150 Ky. 115, 150 S. W. 49, Ann. Cas. 1914A, 832. And in personal injury cases where payment was for loss of time or medical attention the rule does not apply. McGill v. Louisville & N. R. Co., 114 Ky. 358, 70 S. W. 1048, 24 Ky. Law Rep. 1244. In cases ex delicto, it is accepted everywhere that when a party has received money in discharge of a liability for unliquidated damages, he must restore the money before he can avoid the contract of settlement upon the ground of fraud. Kentucky Central Life & Acc. Ins. Co. v. Burrs, 256 Ky. 64, 75 S. W. (2d) 744. In the tort cases called to our attention in which the rule was applied with the statement that the tender should have been made before commencing the action, no tender had ever been made. The question we have before us now is, whether that tender or restoration meets the requirements of the law if made after the commencement of the suit for damages arising from the claims which formed the basis of the settlement.

Broad statements are often made without regarding the distinction between a suit in equity to rescind a contract or an action at law to recover back money or property and an effort to avoid the bar of the original action by a settlement contract. A petition pleading facts sufficient to constitute a cause of action is, of course, good on its face. The settlement may be offered as a defense or it may not. If a party believes it to have been obtained by fraud or there is other vice inherent in the contract, and, therefore, is of no effect, it seems unnecessary that he should anticipate that the other party will rely on it. The initiative should come from him. A release or discharge must be specifically pleaded in order to be available since it is an affirmative defense. 23 R. C. L. 414. It is generally regarded as good pleading not to anticipate a defense. 21 R. C. L. 491; Newman's Pleading & Practice, sec. 212. If the defense of compromise and settlement is pleaded, it is then that the plaintiff must respond to it. Black on Rescission & Cancellation, sec. 395; St. Louis & S. F. R. Co. v. Richards, 23 Okl. 256, 102 P. 92, 23 L. R. A. (N. S.) 1032. The California Supreme Court in O'Meara v. Haiden, 204 Cal. 354, 268 P. 334, 338, 60 A. L. R. 1381, after considering the conflicting authorities, reached the conclusion that:

"Where plaintiff seeks to recover unliquidated damages for an injury sustained ·and the defendant relies upon a release as a defense to said action, the plaintiff is not precluded from showing the invalidity of said release, if he has made a timely offer to rescind the same and restore the consideration, even if said offer is made after the commencement of the action."

The restoration or offer ·of restoration is made in order to accomplish the avoidance of the release and is a condition precedent to doing so. Brotherhood of Railroad Trainmen v. Martin, 256 Ky. 436, 76 S. W. (2d) 269. We are of the opinion that the requirements and purposes of the tender are met if it is ·made when the party institutes his effort to vacate and set aside the contract of settlement or release, which is generally in a reply. We have recognized this as being in time. Shields v. Lewis, 49 S. W. 803, 20 Ky. Law Rep. 1601; Wells v. Royer Wheel Co. (Ky.) 114 S. W. 737; Broadway Coal Mining Co. v. Ortkies, 200 Ky. 8, 254 S. W. 434; Hooks v. Cornett Lewis Coal Co., 260 Ky. 778, 86 S. W. (2d) 697.

(b) We state the substance of the allegations impeaching the release. Shortly after the death of Velma Perkins, the defendant Toppass "acting by and through his duly authorized agents," represented to the plaintiff that he was anxious to do all he could for the family of the deceased. He had only $100 and no other means of paying or compensating her estate. He had been able to borrow some money from his father and could raise $500, which he was willing to give in settlement of the claim, and if she (the plaintiff) did not accept that sum and settle the claim she would not get anything. The plaintiff believed those representations to be true and in reliance on them accepted the $500 and executed the release. The representations were made for the purpose of inducing the execution of the release and were untrue and known to be untrue. The defendant and his agent knew that the defendant was insured against loss or expenses arising or resulting from claims for damages growing out of the death or injury suffered by any one through the operation of the automobile which the defendant was driving in the sum of $5,000 for one person and $10,000 for more than one person. Under the terms of the insurance contract, the insurer was obligated and bound to pay such claims for

damages whether determined by compromise or by settlement. The money which the defendant paid plaintiff was paid by the insurance company and had not been borrowed by the defendant. It is further pleaded that had the plaintiff known such facts she would not have signed the release.

It is argued that the pleading is insufficient because, in effect, it only pleads that the plaintiff did not know that the defendant was insured; it is not alleged that she asked the defendant's agent or any one else representing him whether or not he carried insurance protection, and since there was no duty upon the defendant or his agent to make a voluntary disclosure of that fact, it was not fraudulent not to reveal the same. We think the appellant misses the mark. The fraud alleged consisted of the affirmative statements.

The pleading sets up a clear-cut deception of an existing, material, collective fact, namely, that the defendant was not able to pay but $100, but through a gracious desire to help the plaintiff he had borrowed $400; that he could raise no more, and unless the decedent's representative took that sum she could get nothing; whereas, in fact and in truth, an insurance company was not only furnishing the money, but was bound for as much as $5,000 if there was any liability on the part of the defendant for the death of the girl. As was said in Sun Indemnity Co. v. Dulaney, 264 Ky. 112, 89 S .W. (2d) 307, the contract of insurance was made for the benefit of those who might be injured or killed through the negligence of Toppass and such beneficiary stands in the place of the insured. The pleading stands up under the conclusions in Schlachter v. Henderson's Adm'r, 259 Ky. 759, 83 S. W. (2d) 491; Titus v. Rochester German Ins. Co., 97 Ky. 567, 31 S. W. 127, 17 Ky. Law Rep. 385, 28 L. R. A. 478, 53 Am. St. Rep. 426; Inter Southern Life Ins. Co. v. Stephenson, 246 Ky. 694, 56 S. W. (2d) 332, and Madison Trust Co. v. Helleckson, 216 Wis. 443, 257 N. W. 691, 96 A. L. R. 992.

In State ex rel. St. Louis-San Francisco R. Co. v. Daues, 316 Mo. 474, 290 S. W. 425, a representative of the railway company falsely represented to an injured passenger that the company was going into the hands of a receiver and he probably would not get over 10 cents on the dollar. In reliance upon that representa-

tion, the plaintiff settled his claim for $1,000. In a later suit the company pleaded the release as a bar. The court held the representation as not being merely prophetic of a future event, or an expression of opinion as to what might occur in the future, but as of an existing fact, clearly implying the existence of financial embarrassment or insolvency or some such existing condition as would jeopardize the collection of the claim for damages. Being untrue, the court held the representation was fraudulent and sustained the vacation of the release.

In the light of the evidence and the rule as to the consideration which must be given pleadings after judgment, we must view the allegations of the reply with indulgent eyes. We think the demurrer was properly overruled.

4. In connection with the allegations of the reply in avoidance and rescission of the release, the plaintiff set up the existence and terms of an insurance policy issued by the Wolverine Insurance Company to the defendant Toppass, showing its liability for the payment of the plaintiff's claim for damages; the knowledge of the defendant and his agent of that fact, and the fact that the money was paid by the insurance company. The defendant moved to strike all this from the pleading. The overruling of the motion is submitted as reversible error. The point is also pressed that it was prejudicial to permit references to the insurance in counsel's statement and to admit evidence in relation to it. The policy provided that the insurance company should investigate and undertake to settle claims that might be presented and should defend at its own expense any suits filed against the insured by reason of the operation of his automobile. The basis of the argument of error is that there was no privity of contract between the person injured and the insurer; that the existence of the insurance indemnity was irrelevant to the issue and its entrance into the case was very harmful.

The negotiations and settlement were conducted and made by agents and representatives of the insurance company. It was their persuasion that induced the settlement. It was the very fact of its liability which made those representations untrue. The pleading, statement, and evidence were necessary. The case

could not have been presented without disclosing all this. Hence there was no offense against the rule which prohibits and condemns the disclosure that a defendant in an action for damages is protected by insurance where it sheds no light upon any issue in the case. Coral Ridge Clay Products Co. v. Collins, 181 Ky. 818, 205 S. W. 958, 959; Hedger v. Davis, 236 Ky. 432, 33 S. W. (2d) 310; Gayheart v. Smith, 240 Ky. 596, 42 S. W. (2d) 877; Trevillian v. Boswell, 241 Ky. 237, 43 S. W. (2d) 715. The court more than once admonished the jury of the purpose of the evidence and the limitations which they should attach to it. It may be added that the jury learned the indemnity extended over the claims of Hodges and Miss Long, and yet their verdict was against the one and for only $200 for the other. This shows that the entrance of the situation into the case was not harmful. We perceive no error in these particulars.

5. The appellant earnestly contends the evidence does not establish any grounds for vacating the settlement. The evidence is voluminous. Details adding color and light, though of importance in weighing the evidence as to the main facts and results, may be omitted in the interest of brevity, although they have been given full consideration by the court.

Velma Perkins was nineteen years old and a factory employee. She had been reared by and was living with her grandmother, Mrs. Hattie Perkins, who is uneducated and now elderly. The girl was buried on Monday, June 4th, and the grandmother went to her son's home about fourteen miles in the country. According to plaintiff's evidence, the defendant's brother and representatives of the insurance company went to see her on Wednesday and told Mrs. Perkins that they had been sent by Charlie Toppass to say that he wanted to help her out; that he had $100, which was all he had, and if she did not take that she would not get anything. On Thursday the representatives returned to see if she would accept the $100, which it was repeated was all Toppass had. On Friday one of those who were there on Wednesday, but who declined to give his name, saying only that he was Toppass' friend and had been sent by him, told Mrs. Perkins they wanted her to come to town and that he would take her. She was not ready to go and he asked her to come on Saturday as Charlie

Toppass wanted to make a settlement and "not let it get to court." On Saturday Mrs. Perkins, her son, and his wife came to a law office in Frankfort. An adjuster for the insurance company reported that Toppass had been able to borrow $150 and would pay her $250 and she could look to Saunders for the other $250. She replied that "Mr. Toppass killed my daughter," and she was not looking to Saunders for anything. When she hesitated, the adjuster stated: "When a fellow gives all he has got that is all he can do." Finally, he reported that Toppass had borrowed $450 from his father and "that is all we will do; if you don't take it and sign these papers you won't get anything." Mrs. Perkins then agreed. She testified to her reliance on these statements in ignorance of Toppass' insurance. It was admitted Toppass was insolvent.

One of the attorneys for the insurance company had learned during the intervening days that Miss Perkins' mother was living and had prepared a waiver of the right to qualify as her administratrix in favor of her grandmother. This was sent to the mother and had been signed by her. The grandmother was taken to the courthouse and there qualified. She stated she signed the release before qualifying, but was not certain because "I wasn't in any shape to talk to nobody; I was all tore up over her death." The insurance adjuster gave her his individual check. A neighbor and daughter-in-law corroborate Mrs. Perkins as to much of what was said in the country, and the son and daughter-in-law as to what occurred in the law office.

According to the evidence introduced in behalf of defendant, a local agent and an attorney for the insurance company, after consulting Toppass, went to see Mrs. Perkins on Tuesday, the day after the funeral. She was told that they wanted to settle any claim she might have. She said she had heard that Toppass was drunk at the time, and the attorney told her that if that was so it looked like the others in the car must have known it and so took the risk. He told her Toppass could get her $200, and she agreed to accept that sum and to come to Frankfort the next day and qualify as administratrix. It was then that the waiver of the mother was prepared. Nothing was said in this conversation about Toppass having to borrow any money or that $200 was all he could raise.

On Saturday the family came to Frankfort, Mrs. Perkins stated she ought to have $500, and the adjuster replied he was not prepared to pay her $500, but if she would give him a right to subrogate against Saunders he would give her that much. It is further testified in behalf of the defendant that Mrs. Perkins was told there would be a delay of ten days or two weeks as the money would have to be obtained from the insurance company to which the accident had not been reported. When at the instance of her son she insisted on immediate payment, the adjuster gave her his check and then in her presence dictated a telegram to the insurance company advising it of the settlement and requesting immediate remittance. But some of the evidence indicates she was in the adjoining room. At the county judge's office, in the presence of Mrs. Perkins and her son, in discussing the amount of the bond the judge was told what was being done. His testimony is that mention was made of the settlement by the insurance company. In response to this, the plaintiff insisted that reference was made only to some group life insurance carried by the girl and that it should be taken into consideration in fixing the bond at $1,000. The release was immediately recorded in the county clerk's office.

Concerning the law in connection with the proof, the authorities and statements in relation to the demurrer to the reply are enough to show the evidence for the plaintiff meets the demand. The plaintiff's evidence which is that to be regarded on the question of the insufficiency to sustain the verdict speaks for itself. Gross negligence was conceded. Criminal recklessness was proven. The amount paid in settlement was palpably inadequate. It required but slight additional evidence of fraud in the obtention of the release to overcome such a settlement. Illinois Central Railroad Company v. Vaughn, 111 S. W. 707, 33 Ky. Law Rep. 906. The money was accepted after persistent pressure. The release was procured and induced by false representations, for half a truth may be as vicious as an express misrepresentation. The parties were not dealing at arm's length. "These day after the accident settlements * * * are not looked upon with favor by the courts." Brambell v. Cincinnati, F. & S. E. R. Co., 132 Ky. 547, 116 S. W. 742, 745. We think the jury was authorized to return its verdict having the effect of setting aside the settlement.

6. The appellant invokes the rules of ratification. Repudiation for misrepresentation or fraud must be made seasonably, the party aggrieved being put upon his election to abide or rescind when knowledge of the fraud is brought home to him. The election to affirm a settlement may be either by express words or unequivocal acts. Cox v. Riggins, 223 Ky 510, 4 S. W. (2d) 403; Farmers' Trust Company of Harrodsburg v. Threlkeld's Adm'x, 257 Ky. 211, 77 S. W. (2d) 616. The conduct of the plaintiff said by the appellant to have constituted ratification is that although she had expended nearly all the money received for funeral expenses and bills owing by the decedent before June 14th when she was told by a friend that Toppass was insured, she paid three or four small obligations after that with the balance of the money. This, it is claimed, showed an intention to "pursue the benefits" of the settlement, which is held to show an election to abide by such a contract. Cox v. Riggins, supra; Mock v. Trustees of First Baptist Church of Newport, 252 Ky. 243, 67 S. W. (2d) 9, 94 A. L. R. 716.

While reasonable diligence to discover the facts invalidating a release and promptness to disavow a voidable contract after acquiring full knowledge of the conditions are requisite, where there is an executed contract, it requires an extreme case before the application of the rule of ratification will be inferred from conduct. Kenyon Realty Company v. National Deposit Bank, 140 Ky. 133, 130 S. W. 965, 31 L. R. A. (N. S.) 169; Fletcher v. Wireman, 152 Ky. 565, 153 S. W. 982; Ades v. Wash, 199 Ky. 687, 690, 251 S. W. 970. One should not be held to have adopted a release of this kind procured by fraud in the absence of an unequivocal act giving rise to the inference of an intent to ratify or unless reasonable minds would say that he was guilty of conduct tending to show an intention to do so. We cannot read such an intention into the facts of this case. Louisville & Nashville Railroad Company v. Helm, 121 Ky. 645, 89 S. W. 709, 28 Ky. Law Rep. 603. The trial court properly disregarded this defense.

There are six other points argued by the appellant as sufficient to authorize a reversal of the judgment. We think none of them is well taken.

The judgment is affirmed.