# Schlachter et al. v. Henderson's Adm'r et al.

(Decided June 4, 1935.)

ORIE S. WARE for appellants.

CHARLES E. LESTER, Jr., and J. G. WILLIAMS for appellee Henderson's administrator.

BLAKELY & MURPHY for appellee Mrs. Henderson.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Affirming in part and reversing in part.

On the night of June 7, 1930, a taxicab in which Dorothy Henderson, also known as Dorothy Henderson Chaliff, was riding came in collision with an automobile owned by Henry Schlachter, Sr., and driven by Henry

Schlachter, Jr., and she sustained injuries from which she died immediately. Dorothy Henderson, who was under 18 years of age, resided with her mother in Newport, Ky.

On June 12, 1930, Howard N. Benton qualified as administrator but died in the latter part of the year, and on January 12, 1931, Carl H. Ebert qualified as administrator de bonis non. The latter received from his predecessor $100, and on June 14, 1933, was paid the sum of $6,100 in satisfaction of a judgment in the United States court in Cincinnati in a suit for damages for the death of Dorothy Henderson against Henry Schlachter, Sr., and Henry Schlachter, Jr. Pursuant to an agreement, the administrator paid to Charles E. Lester, Jr., and J. G. Williams, the attorneys who represented him in the damage suit, the sum of $3,000 as their fee, and after paying other fees of the administrator and attorneys, $3,100 was left for distribution.

Thereafter this action was instituted in the Campbell circuit court by the administrator de bonis non against the Schlachters, Clara Bell Henderson and Ernest Henderson, parents of decedent, and Arthur Chaliff, setting out the foregoing facts and alleging that the Schlachters and other defendants were claiming and asserting right, title, and interest to the fund remaining for distribution. He asked that the cause be referred to the master commissioner to settle his accounts and for an allowance for himself for $100 for services rendered and for a reasonable allowance to the attorneys, not to exceed $100.

Ernest Henderson filed a separate answer alleging that Dorothy Henderson was survived by no husband, children, or lineal descendants, and that he and her mother were her heirs at law; that on October 2, 1931, he and the mother executed a release and assignment, a copy of which was attached to and made a part of the answer, by the terms of which they assigned for a consideration of $700 to the defendants Henry Schlachter, Sr., and Henry Schlachter, Jr., any and all rights, title, and interest which they had or might have in the estate of decedent; that by reason of such release and assignment the Schlachters were entitled to any money and assets available for distribution in the hands of the administrator. The release in question was signed by the

father and mother of decedent and by Virginia Henderson, a sister. It provided that in consideration of $700 paid to the father, mother, and sister of decedent, they released and discharged the Schlachters from any and all claims, demands, causes, and rights of action of every character and nature against the Schlachters growing out of her death as above indicated, and assigned to them any and all right, title, and interest which the father, mother, and sister had in the estate of decedent and that the assignment be an authorization to the administrator to pay to the Schlachters any and all amounts payable from the administrator to the Hendersons. It appears that the defendant Arthur Chaliff claimed to be the husband of decedent, and it was upon his motion that the administrator was appointed; however, in this connection, it may be said that the mother by writing ratified the appointment and the arrangement under which attorneys were employed to prosecute the action for damages for the death of decedent.

The Schlachters by answer alleged that Donnelly Brothers had a claim against the estate of decedent for the sum of $455 which they had paid and the account had been assigned to them; that this amount was reasonable and they were entitled to be reimbursed out of the funds of the estate available for distribution. In a second paragraph they set up and relied on the assignment hereinbefore referred to, and alleged that by reason thereof they were entitled to all money and assets available for distribution, which, except for the release and assignment, would be due and payable to the parents of decedent.

By reply, Clara Bell Henderson alleged that Ernest Henderson on the 14th day of July, 1930, and prior to the assignment of October 2, 1931, referred to and made a part of his answer, in consideration that she release him from any claim for the support of herself and the minor children, transferred and assigned to her all rights, title, and interest in the estate of decedent, and she made his written assignment and agreement a part of her pleading. She alleged that at the time of the alleged assignment of October 2, 1931, Ernest Henderson had no claim or interest whatsoever in the estate. In a second paragraph she admitted that the Schlachters paid Donnelly Brothers the amount of the funeral bill incurred in the burial of decedent in the sum alleged

by them, but asserted that in making such payment they acted voluntarily, and denied that the sum paid was a reasonable charge for the burial of decedent, and that the Schlachters should not be permitted to recover any sum in excess of $250 which would be a reasonable cost of the burial. She admitted the execution of the assignment of October 2, 1931, but alleged that the same was procured from her through fraud practiced upon her by the Schlachters and their agent and servants; that after she had employed attorneys and the action for damages had been instituted in the federal court, one Andrew Sack, an agent of defendants, went to Huntington, W. Va., and represented to her that all her attorneys were dead and that the personal representative and the county judge of Campbell county were also dead, and that he (Sack) had been appointed in the place of her attorneys in the matter of the estate of her daughter; that he concealed from her the fact that he was representing the Schlachters and represented to her that in the circumstances and under the laws of Kentucky she would be entitled to no more than $700, and that he would procure this sum for her; that this was the best that could be done and she should take it; that she did not know he was representing the Schlachters and relied on his statements and believed them to be true; that she was ignorant concerning court proceedings or legal affairs, was ill and in great distress, and under these circumstances, and relying and believing the statements of Sack, she did execute the assignment referred to; that she received the sum of $700 under the assignment and except for that sum she was entitled to the balance of the funds in the hands of the administrator subject to distribution.

By an amended petition, the administrator reiterated the allegations of the original petition and alleged that under the assignment and transfer from Ernest Henderson to Clara Bell Henderson, which is referred to in her reply, she became the sole beneficiary of the estate. He further alleged that the funds derived from the litigation in the action for damages for the death of decedent were paid to him as administrator by the Employer's Liability Assurance Corporation, Limited, of London, England, hereinafter called the Assurance Corporation, pursuant to the terms and provisions of a policy of automobile liability or casualty insurance made

and delivered to Henry Schlachter, Sr., and Henry Schlachter, Jr., one or both, and that the Assurance Corporation during the course of the litigation in the United States District Court, by and through its agents and employees, and acting for and on behalf of itself and the Schlachters and without knowledge of plaintiff or his counsel, procured and induced Clara Bell Henderson by fraud, connivance and collusion between the defendant Ernest Henderson, the Assurance Corporation, and the Schlachters to make and execute the assignment and transfer of October 2, 1931, hereinbefore referred to; that under the provisions of the policy the Assurance Corporation upon payment of the judgment against the Schlachters became and was subrogated to the extent of such payment to all right of recovery vested in the Schlachters against plaintiff, and that under such provisions it is the legal and equitable owner of the assignment of October 2, 1931, and is the only party in interest or who had any right which might be asserted thereunder to the fund remaining for distribution. It asked that the Assurance Corporation be made a party defendant and that the policy and all instruments in connection therewith be produced. It further alleged that the funeral services rendered by Donnelly Brothers were rendered at the special instance and sole request of Arthur Chaliff, and not at the instance of Clara Bell Henderson; that it was agreed between Donnelly Brothers and Arthur Chaliff that the charge of the services should be $455; that the Assurance Corporation, acting for and on behalf of itself and defendant Chaliff, voluntarily and without the request of plaintiff or Clara Bell Henderson paid the account of Donnelly Brothers, and that the latter delivered to them the assignment which is filed as an exhibit with the petition; that the Assurance Corporation was the real owner of the claim under the assignment, and that in making such payment it and the Schlachters were volunteers; that such sum was grossly in excess of a reasonable charge for the funeral; and that any charge in excess of $150 should not be allowed on the claim. Subsequent pleadings traversed the material allegations of the petition and reiterated and elaborated the claims of the respective parties.

The court sustained a motion of the defendant Clara Bell Henderson to transfer the case to the com-

mon-law docket for trial out of chancery on issues of fact presented by her reply. A trial of such issues being before a jury resulted in a verdict concurred in and signed by nine members of the jury finding that the paper introduced in evidence dated October 2, 1931, was procured by false and fraudulent misrepresentations of Andrew Sack, who was representing the Schlachters and the Assurance Corporation. Thereafter the cause was transferred to the equity docket and submitted for final judgment. It was adjudged by the chancellor that the release and the assignment of October 2, 1931, was procured from Clara Bell Henderson by the false and fraudulent representations of Andrew Sack, who was representing the Schlachters and the Assurance Corporation; that to the extent of $700 paid to Clara Bell Henderson under the assignment and release, and to that extent only, it was valid; and that the Schlachters and the Assurance Corporation were entitled to recover same. It was further adjudged that $250 was a reasonable charge for the burial of decedent, and to the extent the claim which had been assigned to the Schlachters exceeded that sum, it should be disallowed, and that they recover of the administrator the sum of $250. It was directed that (1) in the distribution of the estate the administrator de bonis non should pay the costs of the action including attorney's fee of $100; (1) that he would pay to the defendants the Schlachters and the Assurance Corporation $950; (3) that the balance of the funds remaining should be paid to Clara Bell Henderson; and the Schlachters and the Assurance Corporation are appealing.

The grounds urged for reversal call for a summary of the evidence. It appears that Clara Bell Henderson and her husband, who had formerly lived in Huntington, W. Va., had separated, and she with her two daughters moved to Newport, where she sought employment as a domestic servant or maid in a hotel. Shortly after the death of her daughter, Dorothy, Mrs. Henderson returned to Huntington, and lived in a room with her mother, who was cooking at a hotel. Her evidence as well as the evidence of her mother and some acquaintances indicates that she was in ill health and highly nervous. She was going under an assumed name, and this, as explained by her mother, was to prevent her husband learning of her whereabouts and annoying her.

After going to Huntington she wrote several letters to the attorneys who were prosecuting the action for damages, and the attorneys wrote to her, but since she failed to give her address and was going under an assumed name, his letters failed to reach her. Some months prior to October 2 when the release and assignment referred to in the pleading was executed, Andrew Sack, a claim agent for the Assurance Corporation, made the trip from his home in Fort Thomas, Ky., to Huntington, W. Va., as he claims, for the purpose of learning whether Arthur Chaliff was in fact the husband of Dorothy Henderson. He first visited a firm of attorneys in Huntington and with their assistance located the mother of Mrs. Henderson and later got in communication with Ernest and Clara Bell Henderson. Mrs. Henderson and her mother and some of the witnesses in the hotel testified that he introduced himself as Mr. Barker. Mrs. Henderson stated that he and her mother came into her room where she was in bed; that she got up and sat on the side of the bed and talked with him; that he told her that he was representing her as her lawyer; that he then told her her lawyer was dead and that Mr. Ebert, administrator, and also Judge Reed were dead; that he advised her to take the settlement and again repeated that her lawyers were dead; that he told her that he thought she could get $700 and the funeral expenses. She replied that that was a small sum for her daughter and he said she would do well to get that amount. Mrs. Henderson's evidence as to the representations made by Sack were corroborated by her mother and in some respects by others. Mr. Sack made two or three more trips to Huntington and on one or two occasions saw Mrs. Henderson. He testified that when he made the trip to learn whether Chaliff was married to Dorothy Henderson, Mrs. Henderson was complaining that she was unable to hear anything from her attorneys concerning the litigation and that she would be glad to get a settlement on the matter; that he was not authorized to make any settlement, but that he communicated the facts to the attorneys in Cincinnati who were representing the Schlachters in the damage suit, and they in turn talked with the attorneys whom he visited in Huntington and entered into the negotiations with Mrs. Henderson which resulted in the payment of the $700 to her.

There appears in the record an agreement signed by

766

Ernest Henderson and Clara Bell Henderson on August 7, 1931, and by Henry Schlachter, Sr., and Henry Schlachter, Jr., on October 13, 1931, wherein, after a long preamble reciting the facts concerning the death of Dorothy Henderson, the appointment of the administrator on the motion of Arthur Chaliff who represented himself to be the husband of decedent when in fact he was not, the institution of the action for damages in the United States court, and that the parties were desirous of settling all claims arising out of the death of decedent and the payment of the funeral bills and expenses, it was agreed that the Hendersons would employ an attorney to represent them in a proceeding to set aside the appointment of the administrator and to have an administrator appointed at their suggestion; that the Schlachters would cooperate with them in furnishing information and proof that the appointment was fraudulent and that Chaliff was not the husband of decedent; that if successful in this effort the Hendersons would agree to accept in full settlement and satisfaction and discharge of their claims against the Schlachters a sum equal to the funeral bills of Dorothy Henderson plus such sum after the payment of costs and legal expense as would net them the sum of $700, and as between the Hendersons the $700 should be paid to the wife and should be a full acquittance and release of any obligations of the Schlachters to the husband under the agreement.

The attorneys at Huntington testified that after this agreement was made Mrs. Henderson made repeated trips to their office to learn when she would receive the $700 and was so persistent in her demands that the release and assignment of October 2, 1931, was executed and a check for $700 was delivered to her. There is also found in the record a contract entered into on January 14, 1933, between the administrator and his counsel and the Schlachters and the Assurance Corporation, that a consent verdict be entered in favor of plaintiff for $6,100; that the administrator would without delay bring suit in the circuit court of Campbell county to settle the estate of decedent and to determine to whom the $3,000 available for distribution should be paid; that the administrator's attorney should be paid the sum of $100 for his services as administrator de bonis non. It was further agreed that the Schlachters

and the Assurance Corporation would be relieved of all claims growing out of the death of Dorothy Henderson, or involved in other actions referred to in the agreement. The attorneys for the administrator agreed not to act as counsel for Clara Bell Henderson or Ernest Henderson in the event they should assert any claim against any part of the proceeds of the judgment, but would act for the administrator in settling the estate and in the proceedings to determine the rights in any funds in the hands of the administrator without further charge out of the $3,000 available for distribution.

Sack testified that he gave his correct name to Mrs. Henderson and her mother and that he made no misrepresentations to her. He and the Huntington attorneys who were representing the Schlachter attorneys in Cincinnati testified that he was introduced in the presence of Mrs. Henderson as Mr. Sack. They also testified that the instruments were read in her presence and that she also read and apparently understood them. The only evidence relating to the bill for burial services is a stipulation concerning the wholesale cost of the casket and the amount charged for various articles and items of service rendered.

It is first argued that the court erred in directing a trial by jury of issues of fact, but this ground is not seriously urged, since counsel admit that this was at least a matter within the discretion of the chancellor. It is apparent that no reversible error was committed in this particular.

However, it is earnestly urged by counsel for appellant that the court erred in instructing the jury in that facts submitted in instructions from which the jury was to determine whether the contract in controversy was procured through fraud and misrepresentations were not supported by the evidence. Possibly some immaterial matters were included in the facts recited, but it is apparent that these matters which were of relative minor importance in no way influenced or controlled the jury's finding. On the whole the instructions properly submitted the facts in evidence from which they were to determine the issues presented to them. Since the verdict of the jury was merely advisory, the instructions should not be measured by the strict standards that would apply if it was controlling. This ground cannot be sustained when the instructions upon a whole prop-

erly submitted the pertinent facts, merely because immaterial matters of a nonprejudicial nature were included.

Insistence that the court erred in partially reducing the burial bill may properly be discussed with the further argument that the court erred in the whole case in refusing to uphold the settlement and enter judgment for appellants. Concerning the evidence as to statements and representations made by Mr. Sack to Mrs. Henderson, there is a sharp conflict in evidence; but in determining whether there is sufficient evidence to sustain the chancellor's finding on this issue we are not confined to the proof of the respective parties as to what was done or said in the negotiations leading up to the execution of the contract, but may consider the situation of the respective parties and all the facts and circumstances appearing in the record and the natural and reasonable inferences to be drawn therefrom.

In the case of Scott v. Spurr, 169 Ky. 575, 184 S. W. 866, 867, the opinion after adverting to the rule that evidence to justify the reformation of a written contract must be clear, convincing, and satisfactory, which rule applies alike in actions for rescission, said:

> "As to whether the evidence is such as the above rule demands before relief is granted depends upon the character of the testimony, the coherency of the entire case, and the documents, circumstances, and facts which are proven."

That appellants recognized the merit of plaintiff's claim in the damage suit is evidenced by their agreement that a $6,100 verdict be entered. Sack was looking after the interest of appellant, and there is ample evidence to indicate that he initiated the proposals and was active in the negotiations leading up to the execution of the contract. He was driving a good bargain for his employers in securing an agreement of Mrs. Henderson to accept less than 50 per cent. of the amount that would be due her under the judgment in the United States District Court to which they agreed. The record clearly discloses that Mrs. Henderson was illiterate and far below the average in natural endowments. She was not versed in legal or business affairs and when she was approached by Mr. Sack was ill and according to evidence highly nervous. She was impatient and dis-

couraged because of delay in trying the damage suit and the failure to receive any reply to her letters to counsel prosecuting the action. She was without advice of counsel or of any person knowing her rights and capable of advising her.

In the case of Collins et al. v. Isaacs, 231 Ky. 377, 21 S. W. (2d) 484, 486, the opinion, after citing authorities indicating that a person possessing mental capacity sufficient to understand in a reasonable way the nature and consequences of his transaction and to exercise a reasonable judgment and choice in regard to it is bound by what he does, said:

"Of course, it is equally as well established that a low degree of mental capacity accompanied with fraud and undue influence will authorize a cancellation when, in the absence of such fraud and undue influence, none would be adjudged."

In Inter-Southern Life Insurance Company v. Stephenson, 246 Ky. 694, 56 S. W. (2d) 332, it is said in effect that a court will not interfere with legitimate business transactions merely because one of the parties through folly or improvidence may sustain a loss in bargaining, and that while inadequacy of consideration alone may not be a ground for rescission of a contract, equity will lay hold on the slightest circumstances of deception and fraud to set aside and annul a contract where there is an unconscionable want of consideration.

From a comprehensive view of the evidence and all the facts and circumstances appearing in the record, it cannot be said that the chancellor erred in his finding that the contract was procured through fraud.

The general equitable principle that one may not be granted the relief sought by Mrs. Henderson and at the same time retain benefits received under the contract is recognized by counsel for the respective parties. Unquestionably the court was correct in giving appellant credit for the amount they paid to Mrs. Henderson; and in any event the reasonable value of the burial expenses was a proper charge against the estate, and the only question to be determined is whether the court erred in reducing the amount paid by appellant to the undertakers. We have already pointed out the evidence bearing on this question, and it may be said that the

reasonableness of the bill may not be determined alone by the wholesale cost of the casket, etc., but other elements must be taken into consideration. There is some evidence that this service was rendered at the instance of Arthur Chaliff, but according to Mrs. Henderson's own evidence, she knew that he was not the husband of her daughter and she apparently accepted and acquiesced in the services rendered. While her agreement with appellants may have been procured by questionable methods, it is apparent that her own conduct led them to pay the funeral bills. It is not denied that they paid the full amount of the bill and will profit in no way by the transaction. In the light of the evidence and all the attending facts and circumstances, we conclude that they should have credit by the amount so paid.

Wherefore the judgment is affirmed in part, and reversed in part, with directions to modify the judgment in the particular indicated.