## Great American Ins. Co. v. Crume.
### (Decided Oct. 23, 1936.)

730

F. M. DRAKE and VICTOR KELLEY for appellant.

ERNEST N. FULTON and A. W. NICHOLS for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing.

This appeal is from a $966 judgment recovered upon a policy of fire insurance.

### The Property Damaged.

Over sixty years ago there was built on the north side of Broadway in Bardstown, Ky., a log house with an outside chimney on its west end. Some years later a large two-story brick building of antebellum architecture was built flush against the west end of this log house and around this chimney, which thus became an outside chimney to the log house, and inside chimney to the brick house and openings were made into it so that it served and was a part of both houses.

The construction of this brick house was peculiar, in this, that while the long walls on the north and south of it were of brick and so was the wall at the west end,

the east wall was not of brick. When the east end was built, studding were simply set up against the west wall of the log house, and these studding were lathed and plastered on the inside. Thus the house so constructed had a brick wall on the south, the west, and the north, but only a wooden wall on the east. The insurance policy involved covered the brick building only.

## The Fire.

In August, 1933, the log house was completely destroyed by fire, but the activity and efficiency of the city fire department was such that, strange to say, the fire was not communicated to the brick house to any great extent though it stood flush against the log one. The damage to the brick house for which the appellant admits liability was to some extent done by fire and to some extent was due to heat, smoke, and water, with possibly some window glass broken in the melee. The parties were unable to agree what this damage was, suit followed, and resulted in the judgment stated.

## Grounds for Reversal.

The first ground is that the verdict is flagrantly against the evidence, but since the judgment must be reversed for other reasons, and the evidence upon another trial may not be the same, we express no opinion on this ground.

The next ground is addressed to errors in the evidence. This was what we defined in Thuringia Ins. Co. v. Malott, 111 Ky. 917, 64 S. W. 991, 23 Ky. Law Rep. 1248, 55 L. R. A. 277, to be a partial loss. The provision of section 762a-22, Ky. Stats., is:

"In cases of partial loss of the property insured, the liability of the company shall not exceed the actual loss of the party insured."

The measure of recovery for such a loss is to be determined by the reasonable cost of restoring or repairing any damage or injury caused solely by the fire to as good condition as it was just before the fire. Citizens' Fire Ins. Co. v. Lockridge, etc.; 132 Ky. 1, 116 S. W. 303, 20 L. R. A. (N. S.) 226. The damage done here by fire, heat, smoke, and water, and glass broken in the melee, were caused solely by the fire within that rule. Witnesses who had examined this building could testify what parts of it were so injured, but only those wit-

nesses who had examined any particular item and were otherwise qualified should have been permitted to testify to the cost of repairing that item, and the testimony of any witness as to the total cost of making these repairs should be rejected unless the witness giving such be able to give the cost of the items that make up such totals. A witness giving totals and unable to give the component items is merely guessing. There should have been, and should yet be, no difficulty in finding men skilled in the erection and repair of buildings such as this, and have them go over this building and note item by item the things the fire caused to be needed to be done to this building using materials of like kind and quality, to restore it to as good a condition as it was before the fire and the cost of such items, including no item not caused to be needed by the fire and excluding no item that was. That was not always done in this case, though the court was constantly endeavoring to hold the evidence within such proper limits.

The above rule is the proper measure of Dr. Crume's recovery, and not what he expended for repairs or the difference in the value of the house before and after the fire. For example, he admits he put a new roof on the L part of the house, and he testifies that was not damaged by the fire. Certain parts of the house may have been so injured by fire, water, etc., that it would have to be renewed to make it as good as it was before, and Dr. Crume may have concluded to let that go as it was, without repair, but that does not mean he cannot recover for it. In other words, Dr. Crume should recover the reasonable cost of the necessary labor and material to make this house as good as it was just before the fire. The cost of the repairs he made may not be the same as that. The doctor may have done some things the fire had not made necessary to be done and left undone some things that should have been done.

### The East Wall.

When, in the course of this fire, the old log building fell, it exposed to view the wall at the east end of this brick building and we shall try to describe it. This wall was about twenty-one feet long. This chimney that belonged to both houses made a part of this east wall, about three and one-half feet, but it did not stand in the middle of this east wall, but from the photographs in this record appears to have been between three and

four feet nearer the south wall than the north one. Two brick lengths and a half, about twenty-two inches, at each end of this east wall was built of brick. Between that twenty-two inches and the southeast edge of the chimney there was a space of about five feet, and between the northeast edge of the chimney and the twenty-two inches of brick on the north side there was a space of about nine feet. Four pieces of studding had been set up in this five-foot space, and five pieces of studding had been set up in the nine-foot space. Laths were nailed to this studding on the inside and they were plastered.

Thus as we understand it there were really five sections of this east wall as it appeared to view after this log building fell. Starting in at the south wall, there was twenty-two inches of brick, then five feet of lath and plaster wall with exposed studding, then the old chimney, then nine feet of lath and plaster wall with exposed studding, then came again twenty-two inches of brick.

Dr. Crume's testimony is in great confusion. At one place he says:

"There were two sections of the end of the building and one of the sections had never been completed, had never been bricked up like the other one had and I paid for fixing that part of it myself."

At another place he says:

"I built from the chimney over to the corner of the house. Here is the chimney about the middle of the building and then on each side of the chimney there was a space like this and over here on this side it had never been bricked up, that is what I was talking about. From the chimney over here it had been and it was lathed and plastered."

We cannot understand the doctor's testimony, but we are sure there was a section of lath and plaster wall on each side of this chimney just as we have stated above; but if we are mistaken and either the five-foot section or the nine-foot section had been built of brick and it fell or had to be taken down because of the fire, then the doctor is entitled to be paid the cost of erecting that much new brick wall. Dr. Crume should be neither enriched nor impoverished. The insurance com-

pany should restore to him what he had before the fire, nothing less and nothing more.

### The New Brick Wall.

To protect this studding from the weather after the fire, a new brick wall was built along it. This new wall cannot be a thing caused by the fire; it resulted from the way the house was built, for if this log house had belonged to a stranger and he had torn it down, the same exposure of this east wall would have resulted and this same brick wall would have been made necessary. The doctor should not recover for this brick wall, for it was not there before the fire; but if this studding or the laths and plaster attached was so injured as to require labor or material to make it as good as it was, he should recover the reasonable cost of that as well as the reasonable cost of labor or material, if any, made necessary to restore the closets on either side of this chimney to as good condition as they were. Dr. Crume in his testimony said he was making no claim for this new brick wall, yet was allowed to testify he had expended something over $250 for repairing that end of the building, and that included the wall. The estimate made by the witness Grigsby also included this brick wall. The testimony of the witness Hahn included the cost of this new brick wall. No evidence regarding this brick wall or its cost should be admitted. Neither should there be any evidence of the cost of storm sheeting of this east end admitted.

### The Instructions.

We believe it will be more helpful to the jury if instruction No. 1 is given in this form:

"The jury will find for the plaintiff, W. E. Crume, such a sum as you may believe from the evidence represents the reasonable cost of restoring or repairing any damage or injury to this house, caused solely by the fire, so as to put it in substantially as good condition as it was just before the fire, your finding not to be less than $— nor to exceed $—."

The court will fill these blanks with such figures as the evidence may require. We find no fault in the other instructions.

Judgment reversed for a new trial.

The whole court sitting.

Perry, J., dissents.