## Strong v. Whicker et al.

(Decided June 3, 1938.)

A. T. W. MANNING, S. H. RICE and CHAS. N. HOBSON for appellant.

ROSE & STAMPER for appellees.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

Alexander (Bud) Strong and Sarah J. Strong, husband and wife, were citizens and residents of Owsley county, Kentucky. Alexander (Bud) Strong died intestate on the 17th day of February, 1934, and his wife, Sarah J. Strong, died testate on the following day, February 18, 1934.

By the terms of her will, Sarah J. Strong devised

and bequeathed to her husband, Alexander (Bud) Strong, all of her estate, with an attempted limitation over of the estate left, if any, after the death of her husband to appellee, Elby Whicker, "for taking care of my husband and myself in our old days." After the will was probated A. J. Strong, a son of Alexander (Bud) Strong by a former marriage, filed his petition in equity in the Owsley circuit court to have the will construed—contending that it vested his father with fee simple title and the attempted limitation over was void. In that action appellee, Whicker, and Dan Wilson, the latter being the administrator of the estate of Alexander (Bud) Strong and administrator with the will annexed of the estate of Sarah J. Strong, were named as joint defendants.

The chancellor construed the will and adjudged that it vested Alexander (Bud) Strong with fee simple title to all the property of the testatrix and the attempted limitation over was of no effect. However, that judgment was without prejudice to the right of Whicker to amend his pleadings and prosecute his claim for the services rendered mentioned in the will of the testatrix, and upon appeal to this court the judgment was affirmed. Whicker et al. v. Strong et al., 258 Ky. 135, 79 S. W. (2d) 388.

Upon a return of the case to the circuit court Elby Whicker, and his wife, Letha Whicker, filed their amended counterclaim and cross-petition in which they pleaded, in substance, that a contract was entered into between them and Alexander (Bud) Strong and his wife, Sarah J. Strong, by the terms of which the Strongs agreed that if Elby Whicker would move on their farm and assist in and perform the work and labor necessary to operating same and care for, nurse and wait on the said Strongs, until their deaths, they and each of them would at their deaths, give, devise, and bequeath to Elby Whicker all of their property of every kind and character, and pursuant to the terms of said agreement Elby Whicker and his wife agreed to and did on the 1st day of March, 1930, move on the farm of the Strongs and assisted in performing the work and labor necessary in the operation of the farm, and did care for and nurse and wait on the said Strongs until their respective deaths. They set out in detail the services rendered, which consisted of all the

usual work chores and all things necessary to the operation of the farm, as follows:

"They state that in performing their part of the contract they plowed the land, fertilized the land, hoed corn, cut and gathered the corn, cut, hauled and stacked hay and put the hay in the barn, fenced land, sprouted and cleared land, fed the stock, milked, cut and gathered and carried in wood and fuel, repaired fences and buildings on said premises, went on errands for the said Strongs, went to mill, carried water and planted the various crops, cultivated the various crops and gathered and attended to all things in connection with the various crops, raised, planted, cultivated and gathered the produce from gardens for the said Strongs and at such times as the said Strongs were unable to attend to their own housework, these defendants and cross-petitioners cooked, did the washing and housekeeping and nursed and attended the said Strongs in their home."

They further alleged that they kept and performed all things on their part pursuant to the terms of the contract, but that said Alexander (Bud) Strong and Sarah J. Strong failed to keep, do and perform their part of the contract in that said Alexander (Bud) Strong died intestate and made no provisions for giving and bequeathing to Elby Whicker his property, but that Sarah J. Strong manifested her intention to perform her part of the said contract in accordance with the terms thereof, by attempting to execute her last will and testament by the terms of which she attempted to give and bequeath to Elby Whicker all of her property after the death of her husband, but the will was ineffective and adjudged not to invest Whicker with any interest in the property. They further alleged that they performed the services indicated above from March 1, 1930, until the time of the death of Sarah J. Strong, February 18, 1934, making a total of 1297 days and that the work and labor performed and services rendered, etc., is reasonably worth the sum of $2.50 per day, making a total of $3242.50, and prayed to recover that sum.

A. J. Strong, plaintiff below and appellant herein, filed his reply to the amended answer, counterclaim and cross-petition of Elby Whicker and his wife, Letha

Whicker, traversing the allegations of the petition and pleaded affirmatively as a defense to their right of recovery that Whicker resided on the farm of Alexander (Bud) Strong and Sarah J. Strong as their tenant and that whatever crops they tended on said farm were tended on a contract for a portion of the crop which they received and appropriated to their own use and benefit each year; and further alleged that the Strongs paid the Whickers for any and all labor and services performed by them for the Strongs.

The affirmative allegations of the reply were controverted by rejoinder thus completing the issues. Upon motion of A. J. Strong an issue out of the chancery was granted by the court and a jury was empanelled to hear and determine the fact issues and found a verdict in favor of appellees in the sum of $500.00. The court entered judgment for the sum found by the jury and adjudged appellees a lien on the land of the Strongs to secure the payment of the judgment and ordered the master commissioner to sell the land or so much thereof as may be necessary to satisfy the judgment, and to reverse that judgment appellant has prosecuted this appeal.

A number of alleged errors are assigned in brief of appellant, viz.: (1) There was a total failure of proof as to services rendered, or the value of same, if rendered, as to Letha Whicker, and it was error to refuse to direct a verdict as to her claim; (2) there is no evidence of any contract with Bud Strong, or services rendered to him, and the motion for a peremptory instruction as to his estate should have been sustained; (3) the verdict as to the estate of Sarah J. Strong is excessive; (4) the instruction given to the jury relating to the measure of damages was confusing and did not state the true measure of recovery; (5) certain remarks of the trial court in the presence of the jury were prejudicial; and (6) the order of sale for the land was error because no showing was made concerning the personalty or its extent or disposition and neither was there any showing whether the land is indivisable. In the circumstances and nature of the case it becomes unnecessary for us to pass upon the merits of all the points complained of as it might be necessary to do if it were strictly a jury case. It must be remembered that this is a case in equity and the action of the chan-

cellor in granting an issue out of the chancery and empanelling the jury to determine the fact issues was merely advisory but not binding on the chancellor. Schlachter et al. v. Henderson's Adm'r et al., 259 Ky. 759, 83 S. W. (2d) 491.

The chancellor had the right in his discretion to ignore the verdict of the jury, but it appears that he followed the verdict as to the amount of recovery. The minor complaint urged to the instructions is that the court apparently fixed as the measure of recovery reasonable *compensation* for the cross-plaintiffs instead of saying reasonable *value* of the services rendered to the Strongs. If it be conceded that this was technically erroneous, yet on the whole the instructions properly submitted the facts from which the jury determined the amount found. In the Schlachter Case supra, it is said (page 495):

"On the whole the instructions properly submitted the facts in evidence from which they were to determine the issues presented to them. Since the verdict of the jury was merely advisory, the instructions should not be measured by the strict standards that would apply if it was controlling. This ground cannot be sustained when the instructions upon a whole properly submitted the pertinent facts, merely because immaterial matters of a nonprejudicial nature were included."

In this connection we will dispose of the question of the verdict and judgment being excessive. The appellees, cross-plaintiffs, sued for 1297 days' service at $2.50 per day, making a total of $3242.50, but the jury found only $500.00, less than one-sixth of the sum sued for. Under the evidence adduced, as will later be shown in our review of the evidence, we do not think the sum found by the jury and confirmed by the chancellor is excessive.

We now come to a consideration of the proof with respect to the contract and the services rendered. The record in the present case was merely an amendment of the original record involving the construction of the will, and the chancellor had before him the original record as well as the amended pleadings, and as a part of the evidence the chancellor had the right to and perhaps did take into consideration the will involved in the original case wherein Sarah J. Strong stated that she willed the remainder of the property, if any, to Elby

Whicker for taking care of her and her husband in their old days. It is a settled rule that even though a will is void and ineffectual to pass title, it may be considered as evidence in an action for services rendered and, perhaps for other purposes, tending to establish a contract or an intention on the part of the testator to make a contract or to pay for services rendered. Mussinon's Adm'r v. Herrin, 252 Ky. 495, 67 S. W. (2d) 710, and cases cited therein. And in addition to this record evidence there is considerable evidence of various witnesses to the effect that they heard a conversation between Sarah J. Strong and Elby Whicker a short while previous to the time the Whickers moved onto the land of the Strongs. The substance or import of the evidence of the witnesses is that Mrs. Strong asked Elby Whicker to move into the tenant house on their farm and operate the farm for them and to wait on her and her husband, Mr. Strong, during their lifetime, and they would will to him all their property. Whicker agreed to the proposition and soon after that time he did move onto the farm about March 1st, 1930, and remained there until the deaths of the Strongs in 1934. Various witnesses testified that they saw Elby Whicker doing all sorts of farm work, going on errands and other business transactions for Mr. and Mrs. Strong; gave them medicine and nursed them in their illness and infirmities and this continued throughout the period they stayed on the farm. One witness testified that Mrs. Strong asked him to tell Elby Whicker to come to her place—that she wanted to see him, and he went to the Strong home with Elby Whicker and his wife and Mrs. Strong told them that they wanted them to move there and take care of them their lifetime and that he might have what they had at their death. Elby Whicker made some complaint about the fitness of the tenant house which the Strongs wanted him to occupy, and the witness, Elby Whicker and Alexander (Bud) Strong went to the house with the view of having a side room built to it or otherwise repair it in order to put it in a tenable condition; they built an additional room to the house and Alexander (Bud) Strong furnished some of the lumber.

While there is no direct evidence of any conversation between Mr. Strong and Elby Whicker relating to an expressed contract as was definitely established between Mrs. Strong and Whicker, yet subsequent devel-

opments and circumstances reasonably warrant the inference that Mr. Strong knew of and acquiesced in the contract made by Whicker and Mrs. Strong. The fact that Mr. Strong went to the house with Whicker and furnished lumber to repair it is evidence that he understood the situation and the purpose of Whicker moving into the house and on the farm, and following this, as is shown by the evidence, Whicker rendered the same services to Mr. Strong as was rendered to Mrs. Strong which was in accordance with the express contract made between Whicker and Mrs. Strong. We think this evidence sufficient to establish a contract on the part of Mr. Strong as well as Mrs. Strong. It follows that there is no merit in the contention that there was no contract with Mr. Strong.

It is also insisted that there were no services rendered to the Strongs by Letha Whicker and it was error to find for her as a joint cross-plaintiff with her husband. There is evidence that Letha Whicker was at the home of the Strongs with her husband, Elby Whicker, assisting and nursing Mr. and Mrs. Strong and cooked for and waited on them when they were unable to wait on themselves.

The evidence for appellant to some extent contradicts the evidence for appellees, but it is chiefly circumstantial. There is no direct evidence tending to contradict the evidence of the witnesses for appellee who testified to the contract made between Mrs. Strong and appellee, Elby Whicker. It is our view that the preponderance of the evidence tends to establish the contract pleaded in the cross-petition and that appellees rendered services to the Strongs under that contract at least commensurate with the judgment.

Finally it is insisted that the court should not have adjudged a lien against the land to secure the payment of the judgment, in the absence of proof that the personal property of the Strongs was insufficient to satisfy the judgment. It is disclosed in the original petition filed by appellant against Elby Whicker in the will case that the personal property of the Strongs was inventoried at the sum of $431. No doubt there are other expenses incurred in the administration of the estate which has been or should be paid out of the personal property in the hands of the administrator. It is to be noted that the judgment ordered the land sold, or so

much thereof as may be necessary to satisfy the judgment. If the commissioner should make an improper sale of the land appellant has his remedy by filing exceptions to the report of sale. And, of course, if there be any personal property in the hands of the administrator not otherwise obligated in the expenses of the administration of the estate, or other preferred claims, it will be his duty to apply it to the payment of the judgment and other debts of equal dignity to the extent of such personal property available.

Finding no error prejudicial to the substantial rights of appellant, the judgment is affirmed.