James **TOTTEN**, Appellant,

v.

**D. F. STEWART** et al., Appellees.

Court of Appeals of Kentucky.

Oct. 7, 1955.

Rehearing Denied Feb. 24, 1956.

John M. Berry, D. K. Floyd, New Castle, for appellant.

John W. Coomes, New Castle, for appellees.

STANLEY, Commissioner.

The appellant, James Totten, built a house for D. F. Stewart and wife for the contract price of $18,500. Totten sued the Stewarts to recover a balance of $2,500 due on the contract and $1,075.50 for extra work and material, subject to certain credits. He prayed judgment for $2,734.50 and the enforcement of a mechanic's and materialman's lien. The defendants filed a traverse and counterclaim for damages for failure to complete the house according to the plans and specifications, for defective workmanship and inferior materials. They prayed that the petition be dismissed and they have judgment for $5,000 over against the plaintiff.

The case was practiced under the former Civil Code.

The suit was in equity since it sought the enforcement of the asserted lien. Over the plaintiff's objection, the court ordered a trial by the jury on the issue out of chancery. The verdict was that the defendants had paid $16,000 of the original contract price of $18,500 and awarded the defendants the remainder of $2,500. The judgment dismissed both the petition and the counterclaim. This was the equivalent of denying plaintiff $2,500 for the poor job, and whatever might have been owing for extras. Totten appeals.

The form of the instructions was as in an ordinary or common law action. No complaint is made as to their substance except in one respect, but the appellant contends the chancellor should have submitted specific questions calling for a special verdict as being only an advisory finding of fact. Of course, except for the question of the adjudication of the lien sought by the plaintiff, the action would have been in ordinary and triable by a jury. Whether the plaintiff was entitled to such an equitable adjudication was dependent upon whether there was anything due him, and, if so, the amount. It was entirely proper, therefore, for the court, in his discretion, to have a jury determine the facts for him. Landrum & Adams v. Wells, Ky., 122 S.W. 213; Merritt v. Palmer, 289 Ky. 141, 158 S.W.2d 163. The general rule of practice under the Code where the issues were legal rather than equitable was to submit the case for a general verdict since special verdicts were not authorized in a common law action. Section 327, Civil Code of Practice; Bishop v. Newman's Ex'r, 168 Ky. 238, 182 S.W. 165. The plaintiff, now appellant, did not offer any instructions or ask for the submission of specific questions. He objected only to the measure of damages stated in the instruction on the counterclaim. We find no error in the manner in which the issues were submitted to the jury.

The defendant, D. F. Stewart, stated in answer to a question that he had talked to Totten about the basement floor

cracking. He was then asked what Totten had offered to do about it, if anything. He started to answer thus: "He finally, after about two years he offered to pour—". His answer was cut off by the appellant's objection which was sustained. A motion for a mistrial on this account was overruled. In the cases cited by the appellant in support of his claim of error, timely objections had been made to the questions, and the witnesses' answers were complete enough to show that there had been offers of compromise. Here, it is to be noted, the objection was not made to the question but was made in interruption of the answer and the objection was sustained. The incompleted answer did not reveal or indicate a compromise had been offered. We cannot regard this as prejudicial error.

■ The admissibility of testimony of W. F. Jones as to the windows leaking is challenged because it was not clearly shown he was in the house when it was raining except on a certain occasion some two years after the Stewarts had moved into it, and the appellant contends that was too remote. The witness was a close neighbor and was in the house perhaps twice a week during all the period. His testimony tended to corroborate that of the defendants' that every window in the house leaked whenever it rained. We think the evidence was admissible, the weight of it being for the jury to determine.

■ Wilson Bennett, a construction engineer, estimated from his examinations it would take $5,000 to put the house in the condition called for by the plans and specifications. The house had been completed in the spring of 1951 and Bennett had examined it in February, 1953. Objections to the testimony rest on the fact that the estimate related to the then condition and not to the time the building was completed, and that the witness was permitted to give a lump sum estimate without first having testified to the cost of repairing or replacing the different items claimed to be defective. The appellant relies on a statement in Great American Insurance Co. v. Crume, 282 Ky. 282, 138 S.W.2d 480. That case

was to recover on an insurance policy for damage to a building by fire. A witness on the first trial was permitted to testify as to the cost of restoring certain parts of the building which he had not examined. His testimony as to the total loss was a mere guess and we ruled it was incompetent. Great American Ins. Co. v. Crume, 266 Ky. 729, 99 S.W.2d 742. On the second trial the witness had given the cost of repair of many items and then totaled it. An examination of his testimony revealed that the several items of cost of restoration about which he testified fell far short of the total sum when duplications were eliminated. That fact forms the context for a general statement in the opinion relied upon by the appellant, that a witness "should not be permitted to give totals unless he gives the cost of all items therein." In the present case, the witness was dealing with the relative or comparative values of the house as a whole rather than with the cost of any or many particular items of loss such as were involved in the Crume case. The witness was fully cross-examined as to many such items and his general estimate. It seems to us that the omission to give an itemized statement affected the weight of the testimony rather than its competency. Commercial Union Assurance Co. v. Howard, 256 Ky. 363, 76 S.W.2d 246; Kentucky-West Virginia Gas Co. v. Slone, Ky., 238 S.W.2d 476; Old Colony Ins. Co. v. Reynolds, Ky., 256 S.W.2d 362.

■ The instructions submitted the measure of damages that might be awarded the defendants on their counterclaim to be "the sum required at the time the house was received to make it conform to the requirements of the contract." The effect of a building contract is to make the contract price the measure of the value of the work as done according to the terms. Morford v. Ambrose, 3 J.J.Marsh. 688, 26 Ky. 688. That is the true measure of recovery by the contractor less the damage sustained by a failure to perform the contract, as by not completing it or doing defective work. Vincennes Bridge Co. v. Walker, 181 Ky. 651, 205 S.W. 778; Cassinelli v. Stacy, 238 Ky. 827, 38 S.W.2d 980. The usual and

often approved measure of the owner's damages where there has been a failure of substantial performance of the contract, as distinguished from defects that are remedial at a reasonable cost without doing the work over, is the difference between the value of the building as constructed and its value had it been constructed according to the contract. Staton Springs Park Co. v. Keesee, 217 Ky. 329, 289 S.W. 292; Hoskins v. Williamson, 228 Ky. 395, 15 S.W.2d 242. This same measure was expressed in Ward v. Qualls, 229 Ky. 662, 17 S.W.2d 739, as being the difference between the value of the house the owner got and the house he should have had.

According to the defendant's proof, there were some departures from the plans and specifications and numerous defects in workmanship which could have been remedied at a reasonable cost. But some of the deficiencies or defects could hardly be torn out and reconstructed without disproportionate cost. The principal item was in the basement floor. It appears that the walls of the building had been erected on the floor and the weight of the building caused a settling and cracking all around the floor a foot or so from the wall.

 It would have been better to give the usual standard of measurement of damages, for in some instances the cost required to make the building conform to the contract would amount to as much as the original contract price, and if the instruction had been literally applied, the result might have been to mulct the contractor in damages in a sum equal to the entire contract price agreed to be paid him for the completed job on account of a comparatively inconsequential failure to literally comply with it. Taulbee v. Moore, 106 Ky. 749, 51 S.W. 564. But when all the evidence is considered, we do not believe the jury was misled by stating the measure of damages to be the cost of making the job conform to the contract. Moreover, there was involved compensation for extra work. It appears, therefore, that the jury found the building to be worth $2,500 less than the contract as modified by the extra work called for, which is not materially different from saying that that sum is the difference in value.

It is to be remembered that the judgment is that of a court sitting in equity and that the verdict was accepted as advisory. Doubtless it would have been rejected had it not conformed to the chancellor's view on the whole case that for the bad job they received, the defendants were entitled to a cancellation of the balance due the contractor. Where the verdict is only advisory, the instructions to the jury are not measured by standards as strict as those where the verdict is controlling. Seldom is the defeated party prejudiced by the form of instructions submitting the issues. Bannon v. Louisville Trust Co., 150 Ky. 401, 150 S.W. 510; Schlachter v. Henderson's Adm'r, 259 Ky. 759, 83 S.W.2d 491; Strong v. Whicker, 274 Ky. 10, 117 S.W.2d 1017. This court is not able to say that the judgment is erroneous.

Judgment affirmed.