RENDERED: NOVEMBER 7, 2025; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0278-MR

MARSHALL TODD D/B/A
MARSHALL TODD BUILDERS                                    APPELLANT


                          APPEAL FROM PULASKI CIRCUIT COURT
v.                        HONORABLE TERESA WHITAKER, JUDGE
                          ACTION NO. 20-CI-00565


RUSSELL WESLEY; BRENDA
WESLEY; AND WINTER R. HUFF                                APPELLEES



OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; CETRULO AND MOYNAHAN, JUDGES.

CETRULO, JUDGE: This appeal follows a jury verdict in an action between a homebuilder and the homeowners. The jury found in favor of the homeowners ("the Wesleys") and against the builder, Marshall Todd d/b/a Marshall Todd ("Builder Todd"). Builder Todd argues that the trial court should have granted a

directed verdict on his claim for a remaining unpaid invoice and that the jury instructions were erroneous. Having reviewed the record and applicable law, we affirm.

## FACTUAL BACKGROUND

In early 2017, the Wesleys approached Builder Todd about construction of a private residence. They provided him with the plans, and he estimated the total construction costs to be approximately $256,000. According to the pleadings filed below, there was agreement "as to an agreement," but there was no written construction contract. Builder Todd began construction of the home in November 2017 and submitted an invoice for $100,429 to the Wesleys in early 2018, which they paid. In June 2018, he sent a second invoice for $78,339, which they paid. The parties agree that the invoices included charges that Builder Todd had paid for various materials and labor. In March 2019, Builder Todd delivered the Wesleys his final invoice for $87,961, which again included charges for material and labor that Todd had previously paid. By this time, the Wesleys had moved into the home, but they were already unhappy with the home. The Wesleys brought in another contractor to repair or complete some work. The Wesleys declined to pay the final invoice, and Builder Todd filed suit for the balance owed. They filed a counterclaim for "offset/credit against any and all claims of the Plaintiff for all amounts paid, and to be paid . . . to construct or remedy the

-2-

deficient, negligent and misrepresented work of the plaintiff, including sums to fix the house as it should have been constructed."

The case proceeded to trial in September 2024. At the close of his case, Builder Todd moved for a directed verdict on his claim for payment of the final invoice, arguing that a contractor is entitled to recovery of his invoice even if there is a claim of defective or incomplete construction. The Wesleys argued that it was a jury question as to whether the contractor built the home in a good and workmanlike manner or substantially performed the parties' agreement. The trial court agreed, denied the motion, and the trial proceeded. Builder Todd testified, along with a building code inspector, Charles Corbett. The Wesleys both testified and provided testimony from an engineer, Craig Brown, and several other witnesses producing estimates for needed repairs to the home totaling $248,595.75.

At the close of the evidence, motions for directed verdict by both parties were denied. The trial court again noted conflicting evidence as to whether the unpaid invoice included charges for work that was found to be defective; charges for work that the Wesleys had also paid to repair; and, questions as to whether Todd was entitled to a management fee which was included on the final invoice.

After several lengthy discussions on the record regarding the wording and order of the instructions, both parties' claims were submitted to the jury which

returned a verdict. First, the jury found Builder Todd did not substantially perform his duty as to the construction of the Wesley residence and awarded no damages for the unpaid invoice. Secondly, on the Wesleys' counterclaim, the jury awarded damages for repair costs attributable to defective construction in the amount requested by counsel, $248,595.75. The trial court denied a subsequent motion to vacate or for a new trial, and this appeal followed.

## STANDARD OF REVIEW

Builder Todd argues the trial court erred in denying his motion for directed verdict and utilized erroneous instructions.

Our standard of review for a directed verdict is well-settled. First, the trial court "must draw all fair and reasonable inferences from the evidence in favor of the party opposing the motion." *Bierman v. Klapheke*, 967 S.W.2d 16, 18 (Ky. 1998). Then, as a reviewing court, we "must ascribe to the evidence all reasonable inferences and deductions which support the claim of the prevailing party." *Id.* A directed verdict is only appropriate "where there is no evidence of probative value to support an opposite result" because a jury may not be permitted to reach a verdict upon speculation or conjecture. *Toler v. Süd-Chemie, Inc.*, 458 S.W.3d 276, 285 (Ky. 2014) (citations omitted).

Our Supreme Court in *Toler* also described our standard of review for allegations of erroneous jury instructions as follows:

-4-

On appeal, we consider allegations of erroneous jury instructions as questions of law to be reviewed under a *de novo* standard. Instructions must, of course, "be based upon the evidence[,] and they must properly and intelligibly state the law." Generally, the rule is "an erroneous instruction is presumed to be prejudicial to appellant, and the burden is on appellee to show affirmatively from the record that no prejudice resulted[.] We only reverse if we cannot determine from the record that the verdict was not influenced by the erroneous instruction. That said, [i]f the statements of law contained in the instructions are substantially correct, they will not be condemned as prejudicial unless they are calculated to mislead the jury.

*Id.* at 288 (internal quotation marks and citations omitted).

### a. Builder Todd was not entitled to a directed verdict.

Builder Todd claims an "absence of proof" on the issue of whether or not he had expended the $87,961 included on the third invoice. He asserts that there were no disputed facts as to his making the expenditures on that invoice. However, by the close of his case, the court and jury had also heard testimony questioning several of his charges. The Wesleys agreed they made no payment, but testified they were required to expend additional funds for remedial repairs by the time the third invoice was presented. They testified Builder Todd was not present or responsive to their many concerns, and they disputed the $8,000 management fee. They testified that the third invoice included amounts for a shower drain and tile that had already been discovered to be defective and unusable. The Wesleys testified to concerns regarding the home's ability to

-5-

withstand weight of snow; the floors being unlevel; doors that would not stay closed; and floor trusses that were inadequate to safely support the load of the home. They hired a mason, bought additional materials to fix the masonry defects, and paid other contractors to address problems with structural integrity.

Then, by the close of all the evidence, the jury had heard from the mason who performed the remedial work, the carpenter who testified to framing problems, a subcontractor who testified to the measures and costs required to fix the shower and tile issues, and the real estate appraiser who explained that the estimated costs of repair were equivalent to the diminution of the value of the house. The estimates for the various repairs of the structural defects and costs were said to be in excess of $248,595.75. Engineer Brown testified that the home was unsound and unsafe structurally, even after the labor and materials already paid by the Wesleys to correct the defective masonry framing and to stabilize the house on a temporary basis. He testified that the Wesleys had been required to move out for "a few days or a week" (although Mrs. Wesley said it was two to three weeks), just to perform temporary measures, but he believed the house still remained unsafe structurally. He testified as to the inadequate roof support and walls bowing outward and outlined multiple code violations and the absence of any engineer involvement.

Builder Todd did not have any response or explanation for many of the problems brought to his attention on cross-examination, but stated that some of the modifications or remedial measures were a "huge overkill." He admitted that he did not calculate the roof load, the floor load, or the rafter span to ensure compliance with the building codes.

The trial court's denial of a directed verdict must be affirmed unless there is no way the jury could have reasonably reached its verdict based on the evidence before it. *Belt v. Cincinnati Insurance Company*, 664 S.W.3d 524, 530 (Ky. 2022) (citation omitted). The trial court was required to determine whether a reasonable juror could conclude that the Wesleys had a basis for refusing to pay the invoice based upon all of the evidence, and considering the evidence in a light most favorable to the Wesleys. Sufficient evidence supported the matter being presented to the jury, and the trial court did not err in denying the motions for directed verdict. *See Toler*, 458 S.W.3d at 285.

### b. The jury instructions were substantially correct and did not mislead the jury.

Builder Todd asserts on appeal that the jury should have been instructed on the doctrine of substantial performance as outlined in *Shreve v. Biggerstaff*, 777 S.W.2d 616 (Ky. App. 1989). The *Shreve* Court specifically stated in a similar factual scenario that

> [t]he jury should have been instructed on the doctrine of substantial performance, which has been explained in this manner:
>
>> Under the rule, a builder, upon substantial performance, is entitled to recovery of the contract price notwithstanding the work may have been defective or incomplete. The remedy of the owner is the recovery of damages on account of incomplete or defective work.

*Id*. at 618 (citing *Meador v. Robinson*, 263 S.W.2d 118 (Ky. 1953)).

Originally, at common law, a literal performance of a building contract was required. *Cassinelli v. Stacy*, 38 S.W.2d 980, 985 (Ky. 1931). The equitable doctrine of substantial performance evolved so as to avoid a windfall to the owner in construction cases where work already in place could not be returned to the contractor. *Id.* Unless the evidence is completely uncontradicted, whether a contract has been substantially performed with the required degree of skill is a question of fact for the jury to determine. *Totten v. Stewart*, 286 S.W.2d 539 (Ky. App. 1955). *Cf.*, *Nance v. Patterson Building Co.*, 131 S.W. 484, 485 (Ky. 1910). Substantial performance, by its very definition, contains a subjective element. "[N]o mathematical rule relating to the percentage of the price, of the cost of completion, or of completeness can be laid down to determine substantial performance of a building contract." 5 BRUNER & O'CONNOR ON CONSTRUCTION LAW § 18:12 (2015); s*ee also Smith v. Arnett*, No. 2014-CA-0835-MR, 2015 WL

4720312 (Ky. App. Aug. 7, 2015) (non-published) (cited as merely persuasive pursuant to Kentucky Rule of Appellate Procedure ("RAP") 41).

First, we must determine whether this argument is sufficiently preserved. The appellate courts have held time and again that a specific objection must be raised before the trial court and a tendered instruction of its own presented for a party to assign an error in instructions. *Sand Hill Energy, Inc. v. Smith*, 142 S.W.3d 153 (Ky. 2004); Kentucky Rule of Civil Procedure 51(3).

Here, Builder Todd's tendered instruction did not include the definition of substantial performance that he now argues should have been given. His tendered instruction also did not define or discuss a workmanlike manner required, but suggested only a duty of ordinary care was required. That tendered instruction was not consistent with the law. Later, in the midst of numerous discussions with the trial court and counsel over wording of the instructions, he agreed that the law likely required a determination of whether the builder had performed in a good and workmanlike manner.[1]

Following those discussions, the trial court again revised language and presented the parties with its intended instructions. The complete instruction given reads as follows:

---

[1] "I think good workmanlike is all right, but I think that plaintiff is not liable to defendants for damages caused by" acts of others, wear and tear, *etc*., which the court did then add to Instruction Number Two.

-9-

You will find for the Plaintiff, Marshall Todd, doing business as Marshall Todd Builders, on the claim for the unpaid invoice if you believe from the evidence that the Plaintiff and the Defendants, Russell and Brenda Wesley, had an agreement that the Defendants would pay the Plaintiff the sum sought in the invoice, and that the Plaintiff incurred expenses and performed tasks sought by the invoice. It was the Plaintiff's, Marshall Todd, doing business as Marshall Todd Builders, [it was the Plaintiff's] duty under the contract with the Defendants, Brenda Wesley and Russell Wesley, to build the home in a good and workmanlike manner, free of defects, and in accordance with the plans and specifications referred to in the contract. The Plaintiff specifically had the duty under applicable Kentucky law and regulations to meet the standards of the mandatory Kentucky Residential Code as it concerns a single family residence. Plaintiff is not liable to the Defendants for any damages caused by, one, the acts or omissions of a person other than the construction professional or his or her agent, employee, or subcontractor; number two, the failure of a person other than the construction professional or his or her agent, employee, or subcontractor to take reasonable action to reduce the damages or maintain the residence; number three, normal wear, tear or deterioration; and four, normal shrinkage, swelling, expansion or settlement. If you are satisfied from the evidence that the Plaintiff, Marshall Todd, doing business as Marshall Todd Builders, substantially performed his duty, you will find [him, find] in his favor and award him the sum not to exceed the amount of the third invoice, the $87,961.00.

In response to the trial court's statement that the foregoing was its intended instruction, counsel for Builder Todd lodged his objection and requested his tendered instructions then stated the following:

Secondly, the, I'm trying to find where to put it, I think the substantial performance doctrine as set forth in the *Shreve*

-10-

> *v. Biggerstaff*, 777 S.W.2d 617, which case was apparently
> overturned at the Court of Appeals for not giving the
> proper instruction, under that rule a builder on substantial
> performance is entitled to recover the contract price,
> notwithstanding the work may have been defective or
> incomplete. Now I *think that language is close*, but it's
> not includ[ed and] "notwithstanding." That's the only
> thing I have, I think." [sic]

(Emphasis added.) It is similarly a "close" question for this Court as to whether this is sufficient to preserve the argument now being made. Builder Todd did not tender an instruction with this language, but did raise it before the jury was instructed.

In a recent case, our Supreme Court found sufficient preservation of an alleged error by a construction company, even though it also failed to include a draft instruction as to their requested language. *Ellison v. R&B Contracting, Inc.*, 32 S.W.3d 66 (Ky. 2000). In part, the Court held that the specificity of the request therein gave the trial court notice of the nature of the instruction requested. *Id.* at 73. The Supreme Court considered the argument but disagreed that the allegation of error required reversal. *Id.* Similarly, we consider the argument, but disagree that the instructions require reversal.

The trial court utilized the pattern instruction suggested in PALMORE & CETRULO, KENTUCKY INSTRUCTIONS TO JURIES, CIVIL, § 38.05, tendered by the Wesleys. Those instructions have been approved by courts in similar actions between a builder and homeowner where the builder is claiming a violation of the construction contract and the homeowner is claiming defects in the construction.

-11-

*See, e.g., Laws v. Riddell*, No. 2003-CA-001079-MR, 2005 WL 928522 (Ky. App. Apr. 22, 2005) (non-published) (cited as merely persuasive pursuant to RAP 41). "The purpose of instructions to a jury is to submit [the] disputed issues of fact for their determination." *Bennett v. Horton*, 592 S.W.2d 460, 464 (Ky. 1979). Moreover, jury instructions must "fairly present to the jury the legal issues involved." *Cobb v. Hoskins*, 554 S.W.2d 886, 887 (Ky. App. 1977). However, "Absolute perfection is not the standard. 'If the statements of law contained in the instructions are substantially correct, they will not be condemned as prejudicial unless they are calculated to mislead the jury.'" *PBI Bank, Inc. v. Signature Point Condominiums LLC*, 535 S.W.3d 700, 720 (Ky. App. 2016) (quoting *Peters v. Wooten*, 297 S.W.3d 55, 64-65 (Ky. App. 2009)). Even imperfect instructions survive scrutiny if they are "based upon the evidence and they . . . properly and intelligibly state the law." *Howard v. Commonwealth*, 618 S.W.2d 177, 178 (Ky. 1981).

Builder Todd now also argues on appeal that the jury instruction is misleading as it required the jury to find that the home was "free of defects." On its face, that clause does appear inconsistent with the *Shreve* case that permits recovery "notwithstanding" if the work is defective. We agree that the better approach would be to inform the jury that substantial performance does not necessarily require that a builder complete a structure free of defects in order to

-12-

recover paid expenses.  Alternatively, the court can inform the jury that a builder upon substantial performance is entitled to recovery of the contract price, notwithstanding the work may have been defective, as was suggested in *Shreve*. However, the conflicting evidence in this case warranted submitting the question of substantial performance to the jury.  As long as the statements of law are substantially correct and do not mislead the jury, they will not be condemned as prejudicial.  *Toler*, 458 S.W.3d at 288; *PBI Bank, Inc.*, 535 S.W.3d at 721.

The instructions were consistent with the evidence, consistent with the cases, and sufficiently adequate and clear to describe the duties owed.  *See Perry v. Williamson*, 824 S.W.2d 869 (Ky. 1992).  The jury was first instructed that it was to find for Builder Todd on the claim for the unpaid invoice "if you believe that the parties had an agreement that the Wesleys would pay Todd the sum sought and that Todd incurred the expenses and performed the tasks sought by the invoice."  Then, Instruction Two advised the jury of Todd's duties, to which counsel agreed. Finally, the jury was instructed that if "you are satisfied that Todd substantially performed his duties, you will find in his favor and award the sum not to exceed $87,961."

The interrogatory thereafter asked the jury to determine whether Builder Todd substantially performed his duties, and the answer was no.  They were asked if the builder violated provisions of the building code, and the answer

-13-

was yes. Finally, they were asked what damages the Wesleys owed Builder Todd for the unpaid invoice, and the answer was $0.00. These were all separate and apart from the subsequent instructions as to the recovery sought by the Wesleys on their counterclaim.

The verdict of the jury was that Builder Todd did not substantially perform the agreement and that the Wesleys suffered significant damages from his defective work. We find the instructions were substantially correct and adequately placed before the jury all of the issues presented and afforded an appropriate framework within which the jury could apply its factual determination of the disputed matters. *See Regalbuto v. Grant*, 473 S.W.2d 833, 840 (Ky. 1971); *Perry*, 824 S.W.2d at 876.

## CONCLUSION

Accordingly, the judgment of the Pulaski Circuit Court pursuant to the jury verdict is AFFIRMED.

ALL CONCUR.

| BRIEFS FOR APPELLANT: | BRIEF FOR APPELLEES: |
|---|---|
| Bryan K. Sergent<br>Manchester, Kentucky | Winter R. Huff<br>Somerset, Kentucky |